STATE OF NORTH CAROLINA v. LEWIS ROGERS, JR.

No. 8114SC9

(Filed 7 July 1981)

1. **Criminal Law §§ 66.1, 66.11— in-court identification—pretrial show-up—opportunity for observation**

   A pretrial identification procedure was not impermissibly suggestive because a robbery victim viewed defendant within an hour of the alleged crime while defendant was sitting handcuffed in a squad car with blood running down his face, and the victim's in-court identification of defendant was not unreliable because the victim never gave the police a detailed description of her assailant and she was only in his presence for several minutes, where the evidence on voir dire showed that the victim conversed with her assailant in a parking lot immediately prior to the attack; the victim had her eyes on her assailant the entire time he ran toward her after breaking into the building where the victim worked; the lighting in the building was very bright; about ten minutes after the crime the police brought a man to the building for the victim to identify, but the victim indicated that he was not the one who had attacked her; and within an hour after this she identified defendant as her assailant without any hesitation or doubt.

2. **Criminal Law § 62— results of voice stress test—absence of stipulation**

   The trial court did not err in the exclusion of testimony by defendant that he denied during a voice stress test that he had assaulted the victim or broke into any building and that he had passed the test absent a valid stipulation between the prosecutor and defendant that the test results would be admissible in evidence.

3. **Criminal law § 162— admission of testimony—violation of constitutional right —failure to object**

   Defendant's allegation that the admission of evidence violated a constitutional right does not prevent the operation of the rule that the admission of competent evidence is not ground for a new trial where no objection was made at the time the evidence was offered.

4. **Constitutional Law § 68; Criminal Law § 128.2— absence of subpoenaed witness—denial of mistrial**

   Defendant was not denied his constitutional right to compel the attendance and testimony of witnesses for his defense by the trial court's refusal to order a mistrial because of the absence of a witness who had administered a voice stress test to defendant and who had been subpoenaed by defendant where defense counsel declined to state what the materiality of the witness's testimony would be. G.S. 15A-1061.

5. **Criminal Law § 111.1— instruction that indictment constitutes no evidence of guilt**

   The trial court's instruction that "the fact that [defendant] has been indicted constitutes no evidence of his guilt of anything whatsoever" did not con-

travene the statute prohibiting reading the indictment to the jury, G.S. 15A-1221(b), and was not prejudicial to defendant.

### 6. Criminal Law § 114.3 — no expression of opinion in instructions

In a prosecution for felonious breaking and entering wherein the trial court, in response to a question by the jury as to whether it must find an intent to commit larceny or an intent to commit a felony in order to return a guilty verdict, instructed that the jury must find an intent to commit larceny at the time of breaking and entering and that in such context larceny included armed and common law robbery, the trial court did not express an opinion on the evidence in further instructing the jury that there was no evidence "in this case of any intent to commit armed robbery, or any other type of theft besides larceny and/or common law robbery."

APPEAL by defendant from *Brewer, Judge.* Judgment entered 25 July 1980 in Superior Court, DURHAM County. Heard in the Court of Appeals 29 April 1981.

Defendant was indicted and convicted of common law robbery and felonious breaking or entering. At trial, Val Rosado testified that on the evening of 18 February 1980 she was working as a part-time research assistant at the Physical Research Center of Duke University. As she was getting ready to leave around 7:30 p.m., she heard a hissing noise outside. She removed a can of dog repellent from her purse and exited the building to check on her car. Outside she observed a man standing beside one of the cars in the parking lot next to the building. The man was standing approximately ten feet from Ms. Rosado, and a light from the building was shining on him. When Ms. Rosado asked the man what he was doing, he responded that air was coming out of her tires. She asked him several more questions, to which the man continued to reply that air was escaping from her tires. Ms. Rosado then panicked, ran into the building, and locked the door. She then telephoned the building next door. She saw a fist come through a glass pane in the door and rip at the lock. The man walked across the room and slapped Ms. Rosado's face several times. She then sprayed him in the face with the dog repellent. After a few seconds, he ran from the building. Ms. Rosado then noticed that her purse, which had been hanging from her shoulder, was missing. She further testified that the man who attacked her was present in the courtroom. At this point a voir dire hearing was conducted to determine the admissiblity of Ms. Rosado's in-court identification of the defendant.

State v. Rogers

On voir dire Ms. Rosado testified that when the man put his fist through the window and opened the door, she was standing approximately fifteen to twenty feet away. The lighting in the room was very bright, and she watched his face as he walked toward her. About ten minutes after the attack, policemen brought a man to the building for her to identify. She informed them that he was not her assailant. Within an hour, the police brought a second man, the defendant, to the building and asked Ms. Rosado whether he was the person who attacked her. Defendant was sitting in the backseat of a squad car and blood was trickling down his cheek. Ms. Rosado observed defendant and immediately identified him as her assailant.

At the conclusion of the voir dire hearing, the trial court denied defendant's motion to suppress the in-court identification and evidence of the pretrial identification procedure. Upon resumption of her direct examination, Ms. Rosado identified defendant as her assailant and then repeated her voir dire testimony.

Ross Dunseath testified that on the evening of 18 February 1980 he was in the building next door to where Ms. Rosado was allegedly attacked. He and a friend heard the intercom buzzing. When they answered the telephone, they heard screaming on the other end. Dunseath and his friend then ran toward the building next door and saw a man running from the building carrying a purse. Dunseath then chased the man to a wooded area. Instead of following him into the woods, Dunseath ran to a nearby campus security station and informed the officers there of the man's whereabouts. The officers already had been notified of the incident. As officers surrounded the wooded area, Dunseath and an officer waited nearby in a squad car for about ten minutes. After hearing something on the radio, Dunseath and the officer drove to an area next to the campus security station. There Dunseath observed a man struggling while officers attempted to handcuff him. He then identified this man as the man he had been chasing. A purse located about ten feet from the man was also identified by Dunseath. Dunseath testified that the man he chased and later identified on 18 February 1980 was defendant.

Campus security officer Larry Scarlett testified that at 7:25 p.m. he received a call that an attack had taken place at a

specified location on campus. While checking the area, he was notified that a suspect was in the wooded area behind the campus security station. He proceeded to this area and spotted a man with a purse in his hand. The man was apprehended and handcuffed. Scarlett testified that this man was defendant. He further testified that after he had handcuffed defendant and after Dunseath had identified him as the man he had chased, defendant was taken to the Physical Research Building. There Ms. Rosado identified him as her assailant. Defendant was then taken to jail.

Defendant presented testimony that on the date at issue, he rode his cousin's bicycle to visit his parole officer and his sister. On the way to his sister's house, he stopped at a Quick Stop near Duke University. When he left the store, the bicycle was missing. Someone then told defendant he had seen a "black dude" riding the bicycle up Erwin Road. Defendant started running up this road and spotted a person riding his bicycle. He lost sight of the bicycle and turned around. As he was returning to the store, he was apprehended. Defendant denied any participation in the alleged crimes.

*Attorney General Edmisten, by Assistant Attorney General George W. Boylan, for the State.*

*Loflin & Loflin, by Ann F. Loflin, for defendant appellant.*

MARTIN (Harry C.), Judge.

Defendant has brought forward nine assignments of error on appeal.

Defendant first argues that Judge Brewer committed error when he made certain findings of fact in his order denying defendant's motion to suppress the in-court identification of defendant and evidence of his pretrial identification. After a voir dire hearing on this motion, the trial court found:

1. On the 18th day of February, 1980, Valda Rosado was employed by a program sponsored by Duke University on a part time basis working generally between 4:30 and 7:30 in the afternoon.

2. At approximately closing time on the 18th of February, 1980, Valda Rosado heard a hissing noise outside the place of business.

3. She went outside and observed a male individual identified by her as the defendant Lewis Rogers, Jr., behind a car.

4. She observed this individual identified as the defendant stand up, saw his face. The area was illuminated by a light from the window of the building.

5. She carried on a conversation with this individual concerning whether or not he had let the air out of the tires. Concerned by his responses Valda Rosado returned inside the place of business.

6. At that time she attempted to make a telephone call to a co-worker in an adjacent office building. That she observed the individual she identifies as the defendant place his fist through the door of the building, unlock the door, and come toward her at a rapid rate of speed.

7. The individual identified as the defendant then struck Valda Rosado, removed a purse from her person, and continued to slap her. She then sprayed a quantity of dog repellent in the face of the individual identified as the defendant and he left the building.

8. Valda Rosado was standing approximately 15 to 20 feet from the door in an area well lighted by artificial lighting, and she concentrated her attention on the face of the defendant during the entire time that he approached her.

9. After the incident in question, within approximately ten minutes, law enforcement officials asked Valda Rosado to determine if an individual located in a police car was the individual who attacked her. Valda Rosado stated that the individual in the police car was not the individual who attacked her.

10. Within an hour of the incident in question law enforcement officials brought the defendant Lewis Rogers, Jr., to the place of business of Valda Rosado and asked her to determine if the individual located in the police car was the individual who attached her.

11. At this time without hesitation Valda Rosado stated that the individual in the police car, the defendant, was the individual who attacked her approximately one hour earlier.

12. The only statement made by law enforcement officers at this time was a request that Valda Rosado determine the individual in the police car was the individual who had attacked her previously.

13. The pre-trial identification procedure, considering all circumstances and the proximity of the time of the identification procedure, and the incident in question, was not impermissibly suggested [sic].

14. The witness Valda Rosado's identification of the defendant in court was not based upon or tainted by the pre-trial identification procedure but was based upon the witness's independent observation of the individual identified as the defendant during the incident in question on the early evening hours of the 18th day of February, 1980.

Defendant specifically contends that findings of fact 3, 4, 6 and 12 are totally unsupported by competent evidence. As to findings of fact 3 and 4, defendant argues that there was no voir dire testimony that Ms. Rosado recognized the man standing in the parking lot as defendant. We find no merit to this argument. Immediately prior to the voir dire hearing, Ms. Rosado testified without objection that she saw a man in the parking lot. On voir dire, she testified that she "did notice his [defendant's] face by the car." There is no indication, as defendant would have us believe, that the man Ms. Rosado saw beside the car in the parking lot and the man who attacked her seconds later were two different men. Defendant further contends that there was no voir dire testimony supporting finding of fact 6. On direct examination prior to the voir dire hearing, Ms. Rosado gave testimony consistent with this finding of fact. This direct testimony was not objected to by defendant. Her testimony on voir dire further supported this finding.

Defendant next contends that finding of fact 12 was unsupported by voir dire testimony, since Ms. Rosado merely testified that she could not recall any "other" statement made by law enforcement officials. He contends that she did not testifiy that their request for her to determine the identity of the individual in the squad car was the "only" statement made. Finally, defendant argues that findings of fact 13 and 14 were erroneously designated as conclusions of law. Findings of fact that are essen-

tially conclusions of law will be treated as such upon review. *Wachacha v. Wachacha,* 38 N.C. App. 504, 248 S.E. 2d 375 (1978). They will be upheld when there are other findings upon which they are based. *Coble v. Coble,* 300 N.C. 708, 268 S.E. 2d 185 (1980). No prejudicial error was committed by these erroneous designations, as the trial court later made conclusions of law almost identical to these findings of fact. The conclusions are supported by the findings of fact.

The alleged errors cited by defendant in the six findings of fact can be considered, at most, technical errors and are clearly not prejudicial. This is particularly true in light of the remaining findings of fact to which defendant did not except. These findings of fact alone are sufficient to support Judge Brewer's order.

In his second assignment of error, defendant argues that Judge Brewer's conclusions of law in his order denying the motion to suppress are unsupported by the findings of fact and violate both defendant's constitutional due process rights and substantial rights provided by Chapter 15A of the General Statutes of North Carolina. Judge Brewer concluded that the pretrial identification procedure was not impermissibly suggestive, that Ms. Rosado's identification of defendant in court was based on her observation of defendant at the time of the alleged crimes and independent of any pretrial identification, that no statutory or constitutional rights of defendant were violated by the pretrial identification procedure, and that defendant's motion to suppress and exclude both his in-court identification and evidence of the pretrial procedure should be denied.

In a recent decision, Chief Justice Branch succinctly summarized the procedure which must be followed in determining whether an in-court identification of a defendant is of independent origin or is tainted by an impermissibly suggestive out-of-court identification.

> An improper out-of-court identification procedure requires suppression of an in-court identification unless the trial judge determines that the in-court identification is of independent origin. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974). The test to determine the validity of pretrial identification procedures under the due process clause is whether the totality of the circumstances reveals pretrial procedures

so suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency, fairness and justice. *State v. Henderson, supra.* Even if the pretrial procedure is invalid, the in-court identification will be allowed if the trial judge finds it is of independent origin. *State v. Headen,* 295 N.C. 437, 245 S.E. 2d 706 (1978). After hearing the voir dire evidence, the trial judge must make findings of fact to determine whether the in-court identification meets the tests of admissiblity. *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974). The standards to be used to determine reliability of the identification are those set out in *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972)—(1) opportunity to view, (2) degree of attention, (3) accuracy of description, (4) level of certainty, (5) time between crime and confrontation. *See State v. Headen, supra.* If the findings of the trial judge are supported by competent evidence, they are conclusive on the appellate courts. *State v. Tuggle, supra.*

*State v. Clark,* 301 N.C. 176, 182-83, 270 S.E. 2d 425, 429 (1980).

[1]  In the instant case, defendant first contends that the pretrial identification procedure was impermissibly suggestive, because it consisted of the alleged victim's viewing defendant within an hour of the alleged crime while defendant was sitting in a squad car handcuffed, with blood running down his face. Defendant also contends that the identification evidence was not reliable, because Ms. Rosado never gave the police a detailed description of her assailant and because she was only in his presence for several minutes at the most. We disagree with these contentions. Admittedly, one man show-ups are not advocated by our courts. We further recognize that there is no evidence in the record that Ms. Rosado gave a detailed description of her assailant to the police prior to any identification. She testified on voir dire that her identification of defendant was based upon the "totality " of his face. The voir dire testimony in the record and the findings of Judge Brewer, however, show that Ms. Rosado had her eyes on her assailant the entire time he ran towards her after breaking into the building, that the lighting in the building was very bright, and that Ms. Rosado conversed with her assailant in the parking lot immediately prior to the attack. About ten minutes after the attack the police brought a man to the building for her to identify, whom she indicated was not the one who had attacked her,

and within an hour after this she identified defendant as her assailant, without any hesitation or doubt. Judge Brewer's findings are therefore supported by competent evidence and are binding on this Court. *State v. Barber*, 278 N.C. 268, 179 S.E. 2d 404 (1971); *State v. Wright*, 275 N.C. 242, 166 S.E. 2d 681, *cert. denied*, 396 U.S. 934 (1969). The findings support the conclusions of law. Our determination here is consistent with other decisions concerning in-court identifications alleged to have been tainted by out-of-court identification procedures. In each of these decisions there had been a pretrial show-up of the defendant. *See State v. Edwards*, 49 N.C. App. 547, 272 S.E. 2d 384 (1980); *State v. McCain*, 39 N.C. App. 213, 249 S.E. 2d 812 (1978); *State v. Quinn*, 36 N.C. App. 611, 244 S.E. 2d 431 (1978); *State v. Westry*, 15 N.C. App. 1, 189 S.E. 2d 618, *cert. denied*, 281 N.C. 763 (1972). Defendant in the instant case has failed to show any violation of his statutory or constitutional rights.

[2]   Defendant next argues that the trial court violated his Sixth Amendment right and his due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the North Carolina Constitution, by refusing to allow defendant to testify as to the results of a polygraph examination. Defendant was merely allowed to testify that he had taken such an examination. Out of the presence of the jury, defendant testified that Richard Elsener gave him a voice stress test, that he told Elsener that he neither assaulted Ms. Rosado nor broke into any building, and that he passed the test. Defendant now alleges that the court's refusal to admit this evidence denied him his right to offer all favorable testimony in his own behalf. We hold that the trial court was required by law to disallow evidence of these test results. "In North Carolina it is well settled that, absent a valid stipulation of admissibility between the parties, results of polygraph examinations are inadmissible in state court proceedings." *State v. McNeil*, 46 N.C. App. 533, 537, 265 S.E. 2d 416, 419, *cert. denied*, 300 N.C. 560 (1980) (citations omitted). Evidence of such a stipulation is missing from the record on appeal.

[3]   Defendant next assigns error to the following question posed to defendant on cross-examination: "And isn't it in fact true that you refused to make any statement whatsoever to the officers after they apprehended you that night?" Defendant responded, "No, they didn't want to talk to me." Defendant argues that this

question violated his Fifth Amendment right not to have his silence used against him. This assignment of error is overruled, as defendant failed to object to the question at trial. The admission of incompetent evidence is not ground for a new trial where no objection was made at the time the evidence was offered. Defendant's allegation that the admission of this testimony violated a constitutional right does not prevent the operation of this rule. *State v. Jones*, 280 N.C. 322, 185 S.E. 2d 858 (1972). Furthermore, upon direct examination, defendant testified that he had spoken with the officers when he was arrested, and later told one of them about the bicycle, a material aspect of his defense. The state is entitled to further investigate issues brought out during the direct examination, even when such testimony is not otherwise admissible. *State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980).

[4] Defendant argues that the trial court erred in denying his motions for mistrial made during the trial and again at the close of all the evidence. During defendant's presentation of evidence, his counsel requested the court to call Richard Elsener, the alleged polygraph examiner, to the stand. Elsener was not present, and defense counsel indicated that he had been subpoenaed and that he was a material witness. Defendant's counsel moved for a mistrial, arguing that Elsener's "failure to be in court to testify is important, necessary, material to the defendant." The court then asked defense counsel what the materiality of Elsener's testimony would be. Defense counsel then responded that it would not be in the best interest of her client to inform the prosecutor of Elsener's testimony. The court thereafter denied defendant's motion for a mistrial. Defendant now contends that this denial was a violation of his constitutional right to compel the attendance and testimony of witnesses for his defense. Pursuant to N.C.G.S. 15A-1061, "[t]he judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." It is within the court's discretion to decide whether such prejudice has occurred, and the court's decision will not be disturbed on appeal absent a showing of gross abuse of that discretion. *State v. Love*, 296 N.C. 194, 250 S.E. 2d 220 (1978). Defendant, in the case sub judice, has shown no abuse of discretion. As the record is silent as to what the witness would have

testified had he been called to the stand, it cannot be determined that the ruling was prejudicial, even if it was error. *State v. Martin*, 294 N.C. 253, 240 S.E. 2d 415 (1978); *State v. Darden*, 48 N.C. App. 128, 268 S.E. 2d 225 (1980). Assuming that Elsener's testimony would have concerned the polygraph test, such testimony would have been incompetent for the reasons previously discussed.

[5]   Defendant next assigns error to that portion of the jury charge where the court instructed: "The fact that he [defendant] has been indicted constitutes no evidence of his guilt of anything whatsoever." Defendant contends that this statement was "highly prejudicial . . . and done in contravention of the purpose and intent of G.S. 15A-1221 and the indictment itself." This assignment of error is without merit. N.C.G.S. 15A-1221(b), 1979 Supplement, provides: "At no time during the selection of the jury or during the trial may any person *read* the indictment to the prospective jurors or to the jury." (Emphasis added.) According to the Official Commentary to N.C.G.S. 15A-1221 (prior to its amendment in 1977), the Criminal Code Commission felt that jurors might "get a distorted view of the case" after "hearing the stilted language of indictments and other pleadings." Clearly no such prejudice could have resulted from this cautionary instruction regarding the indictment.

[6]   Defendant assigns error to the court's clarification of a question posed by the jury. During their deliberation, the jury returned to the courtroom and questioned the court as to whether they must find an intent to commit larceny or an intent to commit a felony, on the charge of breaking or entering. The court instructed them that they must find that at the time of the breaking or entering defendant intended to commit larceny. After a conference with the parties' attorneys, the court then instructed:

> [T]he term larceny, as it is used here, means any type of robbery, any type of theft. For example, common law robbery is a form of larceny. Armed robbery would be a form of larceny, as the term is used here.

When the jury later returned with an unrelated request, the court further stated:

> Ladies and gentlemen, one thing I want to clear up and make sure there was no confusion. When I was answering

your question in my instructions to you was that the State must establish an intent to commit larceny. I indicated to you that the term larceny used in that context is a generic use of the term and would also encompass an intent to commit common law robbery. I also indicated as an example that it would cover an intent to commit armed robbery. I did not mean to imply by that that there was any evidence in this case of such an intent, and you should not construe it is that, and that it would be no evidence, of course, in this case of any intent to commit armed robbery, or any other type of theft besides larceny and/or common law robbery.

I simply wanted to make it clear that an intent to commit common law robbery would be included in the term "intent to commit larceny."

Defendant argues that this clarification constituted a violation of N.C.G.S. 15A-1232, because the court instructed on principles of law not presented by the evidence. The trial judge adequately instructed the jury, both in the excepted-to portion and earlier in the charge, that to find defendant guilty of the breaking or entering as charged, they must find that defendant intended to commit a larceny. Defendant additionally argues that, in this portion of the charge where the trial court instructed "that it would be no evidence, of course, in this case of any intent to commit armed robbery, or any other type of theft besides larceny and/or common law robbery," it expressed an opinion as to defendant's guilt and as to the sufficiency of the evidence. We do not agree. In this statement the court simply clarified that no evidence of armed robbery or any other type theft had been presented by the state. In numerous other portions of the charge, the trial judge correctly and thoroughly instructed upon the applicable law and advised the jury that he had no opinion about any aspect of the case and that they should draw no inference from anything he said or did. Reading the charge as a whole, we find no prejudicial error. *State v. McCambridge*, 23 N.C. App. 334, 208 S.E. 2d 880 (1974).

Last, defendant argues that the trial court committed prejudicial error when it permitted the jury to take two photographs of the alleged crime scene into the jury room. These photographs had earlier been admitted into evidence as state's exhibits 2 and 3. N.C.G.S. 15A-1233 provides in relevant part: "(b) Upon request

by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence." Defendant emphasizes that there is nothing in the record to indicate that the parties consented to this action. Leaving unanswered the intriguing question of whether the statute violates the constitutional concepts of separation of power, Article I, Section 6, North Carolina Constitution, we find that defendant impliedly consented to this action when he failed to object to the jury's request to take the exhibits into the jury room. Additionally, defendant has failed to show any prejudicial error. N.C.G.S. 15A-1443(a) provides:

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant . . ..

Defendant has failed to meet this burden. *See State v. Bell,* 48 N.C. App. 356, 269 S.E. 2d 201 (1980).

We hold that defendant received a fair trial, free of prejudicial error.

No error.

Chief Judge MORRIS and Judge HILL concur.