STATE OF NORTH CAROLINA v. EDDIE LEE VINES

No. 9012SC1170

(Filed 21 January 1992)

1. **Evidence and Witnesses § 1767 (NCI4th)— experimental evidence—admission no error**

    The trial court in a murder prosecution did not err in admitting evidence of an experiment conducted by officers investigating the murder where the evidence tended to show that the two and one-half year old victim died from burns and complications stemming therefrom; the burns allegedly happened when the child climbed into a tub of hot water; the investigating officers ran only hot water in the tub, just as defendant testified he did; the officers took a reading of the water temperature with a standard kitchen thermometer; the temperature was found to be approximately 145°F; this temperature was corroborated by the temperature setting on the water heater located in the house; and 145°F is the normal setting for tap water.

    **Am Jur 2d, Experiments and Tests §§ 820, 821, 825.**

2. **Criminal Law § 720 (NCI4th)— curative instructions—failure to restate following sustained objection—no error**

    The better practice is to issue curative instructions immediately following a sustained objection; however, there is no prejudicial error in the trial court's failure to reissue general curative instructions upon defendant's request.

    **Am Jur 2d, Trial § 1218.**

3. **Criminal Law § 553 (NCI4th)— failure to grant mistrial—no error**

    The trial court did not err in failing to grant a mistrial on the ground the State elicited testimony previously determined inadmissible by the trial court, since the court took reasonable precautions to remove any prejudice to defendant by retiring to chambers to contemplate granting a mistrial, discussing the possibility of a mistrial with counsel, issuing curative instructions that the jury not consider the disputed testimony, and polling the jury to determine if they could

STATE v. VINES

[105 N.C. App. 147 (1992)]

disregard the testimony and continue their duties in a fair and impartial manner.

**Am Jur 2d, Trial §§ 1218, 1708, 1710, 1746.**

**4. Criminal Law § 685 (NCI4th) — jury instruction substantially similar to request — no error**

The trial court's instruction on the burden of proving that the victim's death was an accident was a correct statement of law and substantially conformed to the pattern instruction requested by defendant; therefore, the trial court committed no error in failing to submit the instruction requested by defendant.

**Am Jur 2d, Trial § 1098.**

**5. Criminal Law § 441 (NCI4th) — improper jury argument — integrity of witness and defense counsel challenged — new trial not required**

The prosecutor's jury argument which suggested that the testimony of defendant's expert medical witness was motivated by pay was grossly improper because it attacked the integrity of the witness and defense counsel, and such impropriety would justify a correction *ex mero motu*; however, in the light of the strong and convincing case against defendant, the prosecutor's improper comments did not require a new trial.

**Am Jur 2d, Trial § 695.**

**6. Homicide § 21.7 (NCI3d) — second degree murder — sufficiency of evidence of malice**

Evidence tending to show that defendant deliberately and forcefully placed his infant stepdaughter in a tub of scalding hot water, hot enough to cause fatal burns in as little as ten seconds, was sufficient to show the malice required to support a verdict of second degree murder.

**Am Jur 2d, Homicide § 438.**

APPEAL by defendant from judgment entered 21 May 1990 in CUMBERLAND County Superior Court by *Judge B. Craig Ellis.* Heard in the Court of Appeals 4 November 1991.

Defendant was indicted and convicted of murder in the second degree for the death of his stepdaughter, Chaketha Vines. Chaketha

STATE v. VINES

[105 N.C. App. 147 (1992)]

was two and one-half years old and died after suffering first and second degree burns over her lower extremities, buttocks, abdomen and hands.

The evidence presented by the State at trial tended to show the following facts and circumstances. Defendant, his wife and Chaketha had recently moved into a new residence. On the evening of 15 August 1988 defendant and Chaketha were at home alone. Defendant was caring for Chaketha while her mother was at work.

Defendant made several statements concerning the events of 15 August. These statements, taken at different times after 15 August, were inconsistent and contradictory. Generally, defendant stated that Chaketha climbed into the bathroom tub which he had filled with hot water. In one account of the events, defendant stated he told Chaketha to "get on her nightgown" and prepare for bed. Defendant stated he went to check on Chaketha when she had not returned. Defendant found Chaketha in the tub. Defendant contended Chaketha had climbed into the tub despite being only thirty-one inches tall and quite small for her age.

Defendant stated in another account that the child already had on her nightgown, was "fake crying" and had soiled her nightgown in an effort to delay going to bed. Defendant sent Chaketha to "potty" after she soiled her nightgown and thus she was unsupervised in the bathroom. Defendant then went to check on Chaketha and found her in the tub. In a third account, defendant stated he found the child in the tub while the tub was still being filled with hot water. Defendant estimated Chaketha could have been in the tub up to ten minutes before he found her.

Defendant consistently admitted running only hot water into the tub. Defendant later stated he was drawing the hot bath for himself. Defendant stated he became alarmed upon finding Chaketha in the tub. Defendant took her out of the tub because her skin was red. Chaketha's skin was "peeling" away and "falling off" as she was removed from the tub. Defendant immediately ran cold water on the child's burns. Defendant did not call a doctor or ambulance for Chaketha but instead phoned her mother at work to inform her of Chaketha's condition. Chaketha eventually was taken to Cape Fear Valley Medical Center that evening.

Upon her arrival, Chaketha was treated by Dr. Michael Bauerschmidt, the emergency department physician. Defendant told

Dr. Bauerschmidt that the child had climbed into the tub and burned herself. Dr. Bauerschmidt noted the child suffered no burns above the upper chest or back with the exception of the forearms and hands. There were also no burns observed around the child's toes or across the upper groin. Dr. Bauerschmidt tested the child's reflexes which he found to be consistent with a normally developed child.

Chaketha was transferred to the burn center at North Carolina Memorial Hospital in Chapel Hill due to the extensive nature of her burns. She was treated by Dr. Hugh Peterson, director of the burn center. Dr. Peterson noted the same burn pattern found by Dr. Bauerschmidt and additionally observed the burn line on Chaketha was higher in the front than it was in the back. Chaketha underwent extensive, painful surgery in order to treat her burns. These efforts were unsuccessful and Chaketha eventually died of severe complications.

At trial Drs. Bauerschmidt and Peterson testified that in their opinions based upon the injuries observed, the burns Chaketha suffered could not have been inflicted accidentally. There were no splash marks or uneven burns on Chaketha which would be consistent with defendant's statements that Chaketha accidentally got into the tub. They also testified the burns could not be attributed to normal daily activity. Further, both doctors pointed out that portions of the child's feet were not burned. This fact would indicate something covered Chaketha's feet while she was in the tub. The even burn marks and a noticeable unburned fold on Chaketha's abdomen suggested the child was restrained and immersed in the hot water.

Drs. Bauerschmidt and Peterson, as well as doctors for the defendant, testified it would have taken between two and four seconds to inflict the burns suffered by Chaketha. One doctor testified it could take as long as ten seconds. Dr. Peterson testified that a "discovered" child, referring to defendant's account of the incident, probably could not have been extracted from the water quickly enough to prevent greater burning than was present. Both doctors that treated Chaketha found she reacted normally to pain associated with treating burn wounds.

The State presented testimony from investigating officers who checked the temperature setting on the Vines' water heater and took the water's temperature in the tub using only hot water. A reading of the water temperature in the tub with a thermometer

showed the temperature was approximately 145 or 146 degrees Fahrenheit. This reading was corroborated by the temperature setting of 145 degrees Fahrenheit found on the water heater.

Defendant's evidence tended to establish the following facts and circumstances. Defendant had never drawn water for a bath in the new residence until the evening of 15 August even though the family had lived there for almost a week. It was necessary in the Vines' old residence to run only hot water in order to have suitable water for bathing. Chaketha had previously climbed into a bath unsupervised. Family members testified defendant and Chaketha had a loving relationship and there had never been any abuse of the child.

Expert witnesses for defendant testified that Chaketha suffered from a rare condition known as congenital insensitivity to pain. This condition, as its name implies, prevents one from feeling pain as a normal person. The condition allowed Chaketha to climb into the tub and remain in water long enough to be burned severely. Defendant's experts testified that a proper diagnosis of this condition was entirely dependent upon observational or historical evidence and was to a large degree a matter of conjecture and judgment. Defendant's experts did not observe the child while she was alive. Defendant did not testify at trial.

Defendant was found guilty of second degree murder and sentenced to twenty years imprisonment, in excess of the presumptive term of fifteen years. The trial court found two aggravating and three mitigating factors and determined the aggravating factors outweighed the mitigating factors to support a sentence in excess of the presumptive. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Jane R. Garvey, for the State.*

*James R. Parish for defendant-appellant.*

WELLS, Judge.

We note at the outset that defendant fails to discuss his fourth, six, seventh, eighth, tenth, twelfth and seventeenth assignments of error. These assignments are therefore deemed abandoned. N.C.R. App. P., Rule 28. In his remaining assignments, defendant contends the trial court erred in admitting evidence of an experiment without a sufficient showing of similar circumstances, failing to give curative

instructions as requested by defendant and denying defendant's motion for a mistrial.

Defendant further assigns as error the trial court's failing to instruct on the burden of proof of accident as requested by defendant and to sustain defendant's objections to the State's improper arguments to the jury. Finally, defendant assigns as error the trial court's submitting the possible verdict of second degree murder and imposing a sentence greater than the presumptive on finding the crime was heinous, atrocious or cruel when not supported by the evidence. We find no error.

[1] Defendant first assigns as error the trial court's admitting evidence of the experiment conducted by officers investigating the death of Chaketha Vines. Specifically, defendant contends the conditions of the experiment were not similar to the conditions as they existed on 15 August 1988. Defendant further contends the thermometer used in the experiment to test the temperature of the water they ran into the tub was not shown to be accurate; therefore, the evidence should have been excluded. We disagree.

The law is well settled in this jurisdiction that experimental or demonstrative evidence is admissible when performed under circumstances substantially similar to those existing at the time of the original transaction. The conditions need not be identical, but a reasonable or substantial similarity is sufficient. *State v. Mayhand*, 298 N.C. 418, 259 S.E.2d 231 (1979). The [trial court] is commonly afforded broad discretion in determining whether the conditions and circumstances of an experiment are sufficiently similar to those sought to be duplicated to render the results admissible. *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983). The court's rulings thereon will not be interfered with on appeal unless an abuse of discretion is clearly shown. *State v. Jones*, 287 N.C. 84, 214 S.E.2d 24 (1975).

There is no showing, clear or otherwise, by defendant of an abuse of discretion regarding the introduction of this evidence. The investigating officers ran only hot water in the tub just as defendant testified he did. The officers took a reading of the water temperature with a standard kitchen thermometer. The temperature was found to be approximately 145 or 146 degrees Fahrenheit. This temperature was corroborated by the temperature setting on the water heater located in the Vines' residence. Further, it was testified without objection that 145 degrees Fahrenheit is the

normal setting for tap water. The trial court did not abuse its discretion in admitting this evidence; therefore, this assignment of error is overruled.

[2] Defendant next assigns as error the trial court's failure to give curative instructions as requested by defendant. Defendant objected to certain aspects of testimony of Drs. Bauerschmidt and Peterson while on direct examination for the State. Defendant then requested the trial court issue curative instructions following the court's sustaining of defendant's objections. This request was denied by the trial court and defendant contends this allowed the jury to wrongly consider evidence prejudicial to defendant's case. We disagree.

We note the trial court issued general instructions to the jury at the outset of the trial. Among these were instructions regarding the consideration to be given evidence to which an objection had been raised and sustained. These instructions were, in pertinent part:

When the [c]ourt sustains an objection to a question, the jurors must disregard the question and the answer, if one has been given, and draw no inference from the question or speculate as to what the witness would have said if permitted to answer the question.

These instructions are sufficient to cure any prejudicial effect suffered by defendant regarding evidence to which an objection was raised and sustained. Our Supreme Court stated in *State v. Franks*, 300 N.C. 1, 265 S.E.2d 177 (1980), that it was not prejudicial error when a trial court issued curative instructions at the outset of a trial and failed to reissue them following a motion to strike. However, the Court noted it was the better practice to give instructions to disregard testimony immediately after a motion to strike. In the present case, defendant made no motion to strike but simply requested that the trial court reissue its curative instructions. We agree that the better practice would be to issue curative instructions immediately following a sustained objection. However, we find no prejudicial error in the trial court's failure to reissue these instructions upon defendant's request. Therefore, this assignment of error is overruled.

[3] Defendant next assigns as error the trial court's failure to grant a mistrial on the grounds the State elicited testimony previously determined inadmissible by the trial court. Defendant moved

for a mistrial following the State's attempt to question a nurse about the Vines' behavior while at the North Carolina Burn Center. The trial court had previously admonished the State from asking any questions about the Vines' behavior. Further, the State was directed not to ask any opinion of the witness comparing the Vines' behavior with other parents' behavior whose children had been burn center patients. We find no error.

N.C. Gen. Stat. § 15A-1061 states, in part, a defendant's motion for mistrial must be granted "if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." The decision as to whether prejudice has occurred is addressed to the discretion of the trial judge and is not reviewable absent a showing of gross abuse of discretion. *State v. Rogers*, 52 N.C. App. 676, 279 S.E.2d 881 (1981).

In the present case, it is clear the trial court did not abuse its discretion in denying defendant's motion for a mistrial. Rather, the trial court took reasonable precautions to remove any prejudice to defendant. The trial judge retired to chambers to contemplate granting a mistrial. He discussed the possibility of a mistrial with counsel. Further, the trial court issued curative instructions that the jury not consider the disputed testimony. Finally, the trial court polled the jury to determine if they could disregard the testimony and continue their duties in a fair and impartial manner. Each juror indicated in the affirmative by a show of hands. These actions by the trial court do not show any abuse of discretion; therefore, this assignment of error is overruled.

[4] Defendant next assigns as error the trial court's failure to instruct the jury on the burden of proving Chaketha's death was an accident as requested by defendant. Defendant contends the instruction given by the trial court somehow conveys the notion that defendant's assertion of accidental death is a burden of proof upon defendant, which may be overcome by the State. However, the State contends the disputed instruction is a proper statement of law. Further, the State notes in its brief that defendant admitted at the charge conference there was no substantive difference between the instructions requested and the one given. We agree and find no error.

It is well established that if a request is made for a specific instruction which is correct in law and supported by the evidence,

the trial judge must give the instruction. *State v. Townsend*, 99 N.C. App. 534, 393 S.E.2d 551 (1990), *citing State v. Monk*, 291 N.C. 37, 229 S.E.2d 163 (1976). It is equally well established, however, that the trial court is not required to give a requested instruction in the exact language of the request, so long as the instruction is given in substance. *Id.* The instruction given by the trial court, N.C.P.I.-Crim. 307.10, is a correct statement of law and substantially conforms to the pattern instruction requested by defendant, N.C.P.I.-Crim. 206.35. Therefore, the trial court committed no error in failing to submit the instruction requested by defendant and this assignment of error is overruled.

Defendant's next four assignments of error concern alleged improper arguments to the jury by the State. These assignments, argued together in defendant's brief, will be treated together in this opinion. Defendant first contends the trial court committed reversible error when it overruled defendant's objection to the State's misstatement of law on the issue of malice. In three other assignments, defendant contends the State's closing argument was grossly improper and prejudicial to him. We note defendant failed to object at trial to all but two of the incidents of alleged improper arguments. Therefore, we will first address the incidents to which defendant objected. We will then address the question of whether the trial court should have corrected the other alleged improper arguments *ex mero motu.*

As to defendant's contention regarding the State's misstatement of law, we note the trial court, while overruling defendant's objection, instructed the jury to disregard the prosecutor's misstatement. The trial court further instructed the jury to rely upon it for instructions of law. These are steps the trial court would have taken if the objection had been sustained. Therefore, any error by the trial court in overruling defendant's objection was not prejudicial to defendant and this assignment of error is overruled.

Defendant contends the State's injection of personal opinion into closing arguments was grossly improper and prejudicial. It is well settled that the control of the arguments of counsel must be left largely to the sound discretion of the trial judge with wide latitude given counsel to argue all the law and the facts presented by the evidence and all reasonable inferences. *State v. McCall*, 289 N.C. 512, 223 S.E.2d 303 (1976). However, counsel may not employ his argument as a device to place before the jury incompe-

tent and prejudicial matters by expressing his own knowledge, beliefs and opinions not supported by the evidence. *State v. Allen*, 323 N.C. 208, 372 S.E.2d 855 (1988).

It should be noted that the trial court sustained defendant's objection in the one instance in which an objection was raised on the grounds of injecting personal opinion. Further, the trial court issued curative instructions for the jury not to consider an improper argument. When a trial court sustains a defendant's objection [to the State's improper argument] and instructs the jury not to consider it, the jury is presumed to have heeded the instruction and any prejudice is removed. *State v. Gregory*, 37 N.C. App. 693, 247 S.E.2d 19 (1978). Therefore, this assignment of error is also overruled.

[5] Defendant's remaining assignments on the issue of improper arguments are based on portions of the State's argument in which defendant contends that the prosecutrix argued that defendant contrived a defense and procured false testimony. Defendant failed to object at trial to any of these disputed portions of the State's closing argument. Therefore, the question before this Court is whether the trial court should have corrected the alleged improper argument *ex mero motu*. See *State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144 (1983). In a case where the defendant fails to object to the State's closing argument, the standard of review is one of gross impropriety. *State v. Craig and State v. Anthony*, 308 N.C. 446, 302 S.E.2d 740 (1983).

The prosecutrix began her "evaluation" of defendant's evidence with the testimony of Dr. Leshner, one of defendant's expert witnesses, in this fashion: "And here comes Dr. Leshner. You're right, I'm going to talk about him. You can get a doctor to say just about anything these days." In elaboration upon this theme, the prosecutrix went on to imply or suggest that Dr. Leshner's testimony was motivated by "pay." Such argument not only attacked the integrity of Dr. Leshner but also that of defense counsel. We vigorously disapprove of this improper argument and deem it to have been of such gross impropriety as to justify an *ex mero motu* correction. In the light of the strong and convincing case against defendant, especially the medical evidence presented by the State, we cannot say that the prosecutrix's improper comments are sufficiently prejudicial as to require a new trial. *See State v. Kirkley, supra* and *State v. Craig and Anthony, supra.*

STATE v. VINES

[105 N.C. App. 147 (1992)]

[6] Defendant next assigns error to the trial court's submitting second degree murder as a possible verdict, contending that due to the absence of evidence of malice, such a verdict was not supported by the evidence. Defendant contends that at most the State's evidence would show his culpable negligence, which in turn would support at most a verdict of involuntary manslaughter. We disagree.

While a person may not be convicted of second degree murder in the absence of some intentional act sufficient to show malice, which act proximately causes death, the element of malice may be found in the nature of the intentional act leading to death. *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978). Any act evidencing "wickedness of disposition, hardness of heart, cruelty, recklessness of consequence, and a mind regardless of social duty and deliberately bent on mischief . . ." is sufficient to supply the element of malice necessary for second degree murder. *Id., quoting* from Justice Sharp's dissent in *State v. Wrenn*, 279 N.C. 676, 185 S.E.2d 129 (1971). The evidence in this case tending to show that defendant deliberately and forcefully placed his infant daughter in a tub of scalding hot water, hot enough to cause fatal burns in as little as ten seconds, clearly meets the *Wilkerson* test. This assignment is therefore overruled.

In his final assignment of error, defendant contends that the trial court erred in imposing a sentence greater than the presumptive because the trial court's finding of the factor in aggravation that the crime was heinous, atrocious or cruel was not supported by the evidence. We need not dwell upon the heinous, atrocious and cruel aspect of defendant's crime to reject this argument summarily. This assignment is overruled.

For the reasons stated, we find no prejudicial error in defendant's trial.

No error.

Judges LEWIS and WALKER concur.