McCULLOUGH, Judge.
 

 *688
 
 Timothy Lamont Cobb ("defendant") appeals from his convictions of possession of marijuana, possession of drug paraphernalia, possession with intent to sell and deliver cocaine, and attaining habitual felon status. For the reasons stated herein, we hold no error.
 

 I.
 
 Background
 

 On 8 May 2014, defendant was arrested for one count of possession of marijuana in violation of N.C. Gen.Stat. § 90-95(d)(4), one count of possession of drug paraphernalia in violation of N.C. Gen. Stat § 90-113.22(a), and one of count possession with intent to sell and deliver cocaine in violation of N.C. Gen.Stat. § 90-95(a). On 8 September 2014, defendant was indicted by the Forsyth County Grand Jury on all counts. On the same date, a separate indictment was issued charging defendant with attaining habitual felon status based on three prior felony convictions.
 

 On 10 September 2014, the State notified defendant of its intention to introduce evidence obtained by virtue of a search without a search warrant. On 4 March 2015, defendant filed a motion to suppress this evidence. A
 
 voir dire
 
 hearing on defendant's motion to suppress was held during the 16 March 2015 criminal session of Forsyth County Superior Court.
 

 In regards to defendant's motion to suppress, the State offered the testimony of Officer F.J. Resendes, Officer B.K. Ayers, and Sergeant Edward David Branshaw of the Winston-Salem Police Department. The State's evidence indicated that on 8 May 2014, Officers Resendes and Ayers were stationed outside of defendant's residence, located at 518 Fifteenth Street. Officer Resendes described the residence as a "rooming house," consisting of multiple people living inside and renting out different rooms. The officers were conducting surveillance based on information that there was narcotics activity occurring at this residence. While the officers were stationed outside 518 Fifteenth Street, an unknown black male exited the residence and got into a black Cadillac that had been parked on the curb in front of the home. Officers Resendes and Ayers followed the Cadillac and observed the car fail to properly use a turn signal and illegally park in front of another residence. The
 
 *689
 
 officers parked their car in front of the Cadillac and exited their vehicle. As the officers began to approach the Cadillac, the unknown driver accelerated, struck Officer Ayers in the leg, and quickly sped away from the scene.
 

 Officer Ayers notified his superior, Sergeant Branshaw, of the incident and returned to the 518 Fifteenth Street residence in an effort to obtain information regarding the identity of the driver of the Cadillac. When the officers arrived at the residence, defendant and another tenant, Mr. Rice, were sitting on the front porch. The officers asked defendant and Mr. Rice if they knew the identity of the driver of the black Cadillac, to which both men responded that they did not know his name. Officer Ayers then asked Mr. Rice for his name. Officer Ayers testified that Mr. Rice stated his work identification was inside, stood up from the porch, and motioned for Officer Ayers to come inside with him.
 

 *535
 
 Upon following Mr. Rice into the hallway of the residence, Officer Ayers detected a strong odor of marijuana. Officer Ayers then returned to the porch and asked defendant for consent to search his person. Officer Ayers testified that defendant verbally consented to a search of his person, but that he ultimately did not locate anything illegal on defendant. Officer Ayers testified that he then asked defendant for consent to search his room inside the house, to which defendant again provided verbal consent.
 

 Officer Resendes testified that upon entering defendant's room, he smelled the odor of burnt marijuana. Officer Resendes asked defendant for a second time for consent to search his room, and defendant "stated it was fine." As Officer Resendes began searching the room, defendant handed him remnants of marijuana cigarettes and stated, "All I got is this." Defendant was not in handcuffs or placed under arrest at this time.
 

 Officer Ayers testified that while he was searching defendant's room, he noticed a ceiling panel that was darker in color and not tightly seated against the other tiles, "like it had been removed several times." After removing this tile, Officer Ayers located a bag of what appeared to contain a large amount of crack cocaine. The officers then placed defendant in handcuffs. As the officers continued searching the room, they located a bag of marijuana and approximately $2,000.00 in a coat pocket.
 

 Officer Ayers notified Sergeant Branshaw of what he had located during the search of defendant's room. Sergeant Branshaw testified that upon receipt of this information, he entered defendant's room and asked once again if he was still consenting to the search, to which defendant
 
 *690
 
 replied, "[y]ou already found everything you are going to find. Go ahead and do whatever."
 

 Defendant did not present any evidence on his own behalf.
 

 Following this hearing, the trial court denied defendant's motion to suppress. On 18 March 2015, the trial court orally entered an order denying defendant's motion to suppress, making the following pertinent findings of fact:
 

 17. Officer Ayers did not threaten or coerce Defendant into giving consent to search his bedroom at 518 Fifteenth Street.
 

 18. Defendant freely, intelligently and voluntarily gave consent to search his bedroom at 518 Fifteenth Street without any coercion, duress or fraud.
 

 ....
 

 20. Defendant gave valid consent to search his bedroom at 518 Fifteenth Street.
 

 ....
 

 23. Officer Resendes did not threaten or coerce Defendant into giving consent to search his bedroom at 518 Fifteenth Street.
 

 24. Defendant again freely, intelligently and voluntarily gave consent to search his bedroom at 518 Fifteenth Street without any coercion, duress or fraud.
 

 25. Defendant never revoked or limited his consent to search his bedroom at 518 Fifteenth Street.
 

 26. Defendant gave valid consent to search his bedroom at 518 Fifteenth Street for a second time.
 

 ....
 

 29. Defendant said, "All I got is this" ... freely, spontaneously, and voluntarily without any compelling influences.
 

 ....
 

 34. Up until the moment he was handcuffed and detained ... Defendant was free to leave, not in custody, not under arrest and his freedom of movement had not been restrained or restricted in any significant way.
 

 *691
 
 35. Up until the moment he was handcuffed and detained as set forth above, a reasonable person in Defendant's position would not have believed he was under arrest or restrained in any significant way.
 

 ....
 

 37. Sergeant Branshaw did not threaten or coerce Defendant into giving consent to search his bedroom at 518 Fifteenth Street.
 

 38. Defendant, for the third time, freely intelligently and voluntarily gave consent
 
 *536
 
 to search his bedroom at 518 Fifteenth Street without any coercion, duress or fraud.
 

 39. Defendant never revoked or limited his consent to search his bedroom at 518 Fifteenth Street.
 

 40. Defendant gave valid consent to search his bedroom at 518 Fifteenth Street for a third time.
 

 Based on these findings of fact, the trial court concluded that:
 

 1. Based on the totality of the circumstances ... Officers F.J. Resendes and B.K. Ayers and Sergeant Edward David Branshaw requested and received knowing and voluntary consent from Defendant without any coercion, duress or fraud to search his bedroom ... and that anything seized from Defendant's bedroom as a result of the search was obtained lawfully.
 

 2. Based on the totality of the circumstances ... Defendant had not been taken into custody or otherwise deprived of his freedom of movement in any significant way when he said, "All I got is this," as set forth above.
 

 3. Based on the totality of the circumstances ... there had been no formal arrest or restraint on the freedom of Defendant's movement of the degree associated with a formal arrest when he said, "All I got is this," as set forth above.
 

 4. Based on the totality of the circumstances ... Defendant was not in custody when he said, "All I got is this," as set forth above.
 

 5. Based on the totality of the circumstances ... a reasonable person in Defendant's position would not believe that
 
 *692
 
 he had been taken into custody or otherwise deprived of his freedom of movement in any significant way when he said, "All I got is this," as set forth above.
 

 6. Based on the totality of the circumstances ... Defendant freely made a knowing and voluntary statement when he said, "All I got is this," as set forth above.
 

 On 18 March 2015, a jury returned verdicts of guilty on all substantive counts. On that same date, defendant pled guilty to attaining habitual felon status. In accordance with this plea, defendant was sentenced to prison for a term of 52 to 75 months. On that same date, defendant entered notice of appeal in open court.
 

 II.
 
 Standard of Review
 

 When reviewing a trial judge's ruling on a motion to suppress, the appellate court "determine[s] only whether the trial court's findings of fact are supported by competent evidence, and whether these findings of fact support the court's conclusions of law."
 
 State v. Pulliam,
 

 139 N.C.App. 437
 
 , 439-40,
 
 533 S.E.2d 280
 
 , 282 (2000). The trial court's findings of fact are binding if such findings are supported by competent evidence in the record, but the trial court's conclusions of law are fully reviewable on appeal.
 
 State v. Smith,
 

 346 N.C. 794
 
 , 797,
 
 488 S.E.2d 210
 
 , 212 (1997).
 

 III.
 
 Discussion
 

 Defendant presents two issues on appeal. Defendant asserts that the trial court erred by: (A) denying defendant's motion to suppress evidence obtained from the search of defendant's room because the defendant's consent to search was not given voluntarily and (B) sentencing defendant as a habitual felon in violation of defendant's right to be free of cruel and unusual punishment.
 

 However, we must first address a preliminary issue.
 

 Timeliness of Motion to Suppress
 

 For the first time on appeal, the State asserts that defendant violated N.C. Gen.Stat. § 15A-976 by failing to file its motion to suppress within the allotted statutory time period.
 

 According to N.C. Gen. Stat § 15A-976(b) :
 

 If the State gives notice not later than 20 working days before trial of its intention to use [evidence obtained by virtue of a search without a search warrant], the defendant may move to suppress the evidence only if its motion
 
 *693
 
 is made not later than 10 working days following receipt of the notice from the State.
 

 N.C. Gen.Stat. § 15A-976(b) (2015).
 

 In the present instance, the State put defendant on notice that it intended to offer
 
 *537
 
 evidence seized without a warrant on 10 September 2014, but defendant did not file his motion to suppress until 4 March 2014. The State now asserts that because this far exceeds the 10 days within which a motion to suppress must be filed in order to comply with N.C. Gen.Stat. § 15A-976, this issue has not been preserved for appellate review. The State argues that although this issue was not raised at trial, our Court has held that the requirements of Chapter 15A, Article 53 must be met or the motion is a nullity.
 

 In the unpublished opinion
 
 State v. Harrison,
 
 --- N.C.App. ----, ----,
 
 772 S.E.2d 873
 
 , ----,
 
 2015 WL 1800443
 
 (April 2015) (unpub.), our Court addressed this exact issue. In
 
 Harrison,
 
 we held:
 

 Although defendant's motions to suppress were untimely and could have been summarily dismissed, the trial court exercised its discretion to consider the motions and denied the motions on the merits. We will not now second[-]guess the trial court's discretion to consider the motion after it has ruled on the merits.
 

 Id.
 

 at ----, 772 S.E.2d at ----.
 

 Although unpublished decisions do not constitute controlling legal authority upon this Court,
 
 see
 

 Lifestore Bank v. Mingo Tribal Pres. Tr.,
 

 235 N.C.App. 573
 
 , 583 n. 2,
 
 763 S.E.2d 6
 
 , 13 n. 2 (2014) (citing N.C. R.App. P. 30(e)(3) (2014)), we find the reasoning in
 
 Harrison
 
 persuasive.
 

 Our decision in
 
 Harrison
 
 is further supported by
 
 United States v. Johnson,
 
 in which the Fourth Circuit was asked to review the trial court's dismissal of an untimely motion to suppress.
 
 See
 

 United States v. Johnson,
 

 953 F.2d 110
 
 , 115-16 (4th Cir.1991),
 
 superseded by statute on other grounds as stated in
 

 United States v. Riggs,
 

 370 F.3d 382
 
 , 385 n. 2 (4th Cir.2004). Although the trial court in
 
 Johnson
 
 chose to dismiss the motion rather than ruling on the merits, the Fourth Circuit opinion noted, "Motions filed out of time are accepted at the discretion of the trial court, and this court will not entertain challenges to the proper use of this discretion."
 
 Id.
 
 at 116.
 

 Accordingly, although defendant's motion to suppress was untimely, we hold that the decision of the trial court to nonetheless consider the
 
 *694
 
 motion should not be revisited. Thus, we review the merits of defendant's arguments on appeal.
 

 A.
 
 Motion to Suppress
 

 In his first issue on appeal, defendant claims that the trial court erred by denying his motion to suppress because defendant did not give voluntary consent to search his room.
 

 Labeling Conclusions of Law as Findings of Fact
 

 On this issue, defendant first contends that the trial court erroneously labeled certain conclusions of law as findings of fact. Defendant specifically challenges findings of fact numbers 17, 18, 20, 23, 24, 25, 26, 34, 35, 37, 38, 39, and 40.
 

 "As a general rule, ... any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law."
 
 In re Helms,
 

 127 N.C.App. 505
 
 , 510,
 
 491 S.E.2d 672
 
 , 675 (1997) (internal citations omitted). However, this Court has also held, "What is designated by the trial court as a finding of fact [ ] will be treated on review as a conclusion of law if essentially of that character. The label of fact put upon a conclusion of law will not defeat appellate review."
 
 Wachacha v. Wachacha,
 

 38 N.C.App. 504
 
 , 507,
 
 248 S.E.2d 375
 
 , 377 (1978) (citations omitted). When a trial court erroneously designates certain conclusions of law as findings of fact, no prejudicial error is committed when the trial court later makes conclusions of law almost identical to the findings of fact.
 
 See
 

 State v. Rogers,
 

 52 N.C.App. 676
 
 , 682,
 
 279 S.E.2d 881
 
 , 885-86 (1981). Such errors are, at most, technical errors and are clearly not prejudicial.
 

 Id.
 

 On this issue, defendant first argues that findings of fact numbers 17, 18, 20, 23, 24, 26, 37, 38, and 40, concerning the question of whether defendant voluntarily gave consent to search his room, were improperly labeled as findings of fact because the question of voluntariness or coercion is one of law not fact. While defendant correctly asserts that the general issue of "voluntariness" is considered to be one of law,
 
 see
 

 *538
 

 State v. Hardy,
 

 339 N.C. 207
 
 , 222,
 
 451 S.E.2d 600
 
 , 608 (1994) ("The conclusion of voluntariness [of a defendant's statement] is a legal question which is fully reviewable");
 
 State v. Barlow,
 

 330 N.C. 133
 
 , 139,
 
 409 S.E.2d 906
 
 , 910 (1991) ("[T]he question of the voluntariness of a confession is one of law, not of fact."), defendant's objection to the labeling of these findings is without merit. The trial court's factual findings numbered 17, 18, 20, 23, 24, 26, 37, and 40 are nearly identical to its conclusions of law numbered 1 and 6, which conclude that defendant's consent was voluntary, without
 
 *695
 
 any coercion, duress, or fraud. Therefore, we find that the errors cited by defendant are not prejudicial, and we treat the question of voluntariness as a conclusion of law.
 

 Next, defendant asserts that findings of fact numbers 34 and 35, concerning the question of whether defendant was "in custody" at the time his room was searched, were improperly labeled as findings of fact because the question of custody is one of law not fact. For the same reason stated above, we find that defendant's objection to these findings is without merit. Findings of fact numbers 34 and 35 are reiterated, nearly verbatim, in the trial court's conclusions of law numbers 2, 3, 4, and 5. Thus, we again find that the alleged errors cited by defendant are not prejudicial, and we treat the question of custody as a conclusion of law.
 

 Finally, defendant asserts that findings of fact numbers 25 and 39 were improperly labeled as findings of fact because they concern the scope or limit of consent, which defendant contends is a question of law not fact. However, these technical errors appear to be defendant's sole grievance with findings 25 and 39; nowhere on appeal does defendant claim that these findings are not supported by competent evidence. Thus, we reject defendant's challenges to the trial court's designation of findings of fact numbers 25 and 39.
 

 Sufficiency of the Trial Court's Conclusions of Law
 

 Next, defendant contends that the trial court's findings of fact are insufficient to support its legal conclusion that defendant gave voluntary consent to search. Specifically, defendant claims that since he had been informed that there was a narcotics investigation in progress at the time it was contended he gave consent and was kept under "constant police supervision by at least one and often more of the officers" at all times after he was told there was a narcotics investigation, his consent was not voluntary because he was "in custody" at the time it was given. Defendant argues that a reasonable person in the place of defendant would not have felt at liberty to ignore the police presence and go about his business, and thus defendant was seized for purposes of the Fourth Amendment of the United States Constitution. We disagree.
 

 An individual is seized by a police officer and is thus within the protection of the Fourth Amendment when the officer's conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. A reviewing court determines whether a reasonable person would feel free
 
 *696
 
 to decline the officer's request or otherwise terminate the encounter by examining the totality of circumstances.
 

 State v. Icard,
 

 363 N.C. 303
 
 , 308-309,
 
 677 S.E.2d 822
 
 , 826 (2009) (internal citations and quotation marks omitted). Relevant considerations under the totality of the circumstances test include, but are not limited to: the number of officers present, whether the officers displayed a weapon, the words and tone of voice used by the officers, any physical contact between the officer and the defendant, the location of the encounter, and whether the officer blocked the individual's path.
 
 Id.
 
 at 309,
 
 677 S.E.2d at 827
 
 .
 

 Defendant relies on
 
 State v. Dukes,
 

 110 N.C.App. 695
 
 ,
 
 431 S.E.2d 209
 
 (1993), as support for his argument that a person who is kept under constant police supervision in the persons own home and is aware that the police are there investigating a specific crime can be considered "in custody." In
 
 Dukes,
 
 this Court held:
 

 We believe that a reasonable person, knowing that his wife had just been killed, kept under constant police supervision [including trips to the restroom], told not to
 
 *539
 
 wash or change his clothing and never informed that he was free to leave albeit his own home, would not feel free to get up and go. On the contrary, a reasonable person in defendant's position would feel compelled to stay. We hold therefore that the defendant was "in custody" when he made the statement at issue....
 

 Id.
 
 at 702-703,
 
 431 S.E.2d at 213
 
 .
 

 The facts of the present case are distinguishable from those in
 
 Dukes.
 
 Unlike the defendant in
 
 Dukes,
 
 there is no evidence that defendant's movements were limited by any of the officers at any point in time during the encounter. The officers did not "supervise" defendant while they were in his home. They simply followed defendant to his room after he gave them consent and defendant chose to stay in the room while the officers searched it. Absent any other indication that the officers restricted defendant's movements in any way, the only evidence that supports defendant's claim that he was "in custody" is the mere presence of four uniformed police officers at defendant's house. This, alone, does not equate to "constant police supervision." Therefore, we find that the trial court was correct to conclude that defendant was not "in custody" at the time he gave consent to search his room.
 

 *697
 
 Considering the totality of the circumstances, we conclude that a reasonable person in the place of defendant would not have felt compelled to consent to the officer's request to search. According to the uncontradicted evidence presented by the State, the officers' guns were holstered throughout the entire encounter, and never drawn. Until the officers found the cocaine and placed defendant under arrest, the officers did not restrain defendant in any way. There is no evidence indicating that any of the officers ever made physical contact with defendant, aside from placing him in handcuffs. There is also no showing that the officers ever made threats, used harsh language, or raised their voices at any time during the encounter. Although there were four officers present at defendant's residence, only two, Officers Ayers and Resendes, were speaking with defendant when he initially gave consent to search his room. At that time, the other two officers at the residence were in the street investigating the hit and run incident, which defendant knew to be the primary reason for the police presence at his home. Additionally, Sergeant Branshaw only entered defendant's room
 
 after
 
 the crack cocaine had been located and defendant had been handcuffed. Accordingly, we hold that defendant's consent was given voluntarily and conclude that the trial court did not err in denying defendant's motion to suppress.
 

 B.
 
 Habitual Felon Status
 

 In his second argument, defendant contends that his sentencing under the Habitual Felon Act violates his constitutional right under the 8th and 14th amendments of the United States Constitution and Article I Sections 19 and 21 of the North Carolina Constitution to be free of cruel and unusual punishment. Defendant urges this Court to re-examine its prior holdings and find that his sentencing under the Habitual Felon Act are excessive and grossly disproportionate to those under Structured Sentencing alone.
 

 This exact issue has already been addressed by this Court in
 
 State v. Mason,
 

 126 N.C.App. 318
 
 ,
 
 484 S.E.2d 818
 
 (1997),
 
 cert. denied,
 

 354 N.C. 72
 
 ,
 
 553 S.E.2d 208
 
 (2001). In
 
 Mason,
 
 the defendant argued that the violent habitual felon laws were unconstitutional because they denied the defendant freedom from cruel and unusual punishment. Our Court held that:
 

 [O]ur Supreme Court has addressed these same issues in regard to the habitual felon statute and determined that the General Assembly acted within constitutionally permissible bounds in enacting legislation designed to identify
 
 *698
 
 habitual criminals and to authorize enhanced punishment as provided. Therefore, the violent habitual felon statute is not unconstitutional on its face.
 

 Id.
 

 at 321
 
 ,
 
 484 S.E.2d at 820
 
 (internal citations and quotation marks omitted). "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 
 In re Civil Penalty,
 

 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989). Accordingly, we reject defendant's
 
 *540
 
 argument that his sentence under the Habitual Felon Act denied his right to be free of cruel and unusual punishment.
 

 IV.
 
 Conclusion
 

 For the foregoing reasons, we hold that the trial court did not err in denying defendant's motion to suppress. We further hold that defendant was not denied his constitutional right to be free of cruel and unusual punishment.
 

 NO ERROR.
 

 Judges STEPHENS and ZACHARY concur.