ZACHARY, Judge.
 

 *580
 
 Defendant Marlon Louis Bartlett appeals from the trial court's order denying his Motion to Suppress. For the reasons contained herein, we affirm.
 

 Background
 

 Defendant was indicted for two counts of trafficking heroin following a search of his person during a traffic stop. Defendant moved to suppress the heroin on the grounds that it was obtained as the result of an unlawful search, which the trial court denied. The facts pertaining to the search are largely undisputed:
 

 On 30 May 2013, Officer McPhatter, a tactical narcotics officer with the Greensboro Police Department, was patrolling the High Point Road area in an unmarked vehicle. Officer McPhatter noticed a Lincoln sedan weaving in and out of heavy traffic at a high rate of speed, nearly causing multiple collisions. The Lincoln then pulled into a Sonic Drive-In parking lot next to an unoccupied Honda.
 

 Officer McPhatter continued surveilling the Lincoln. Defendant, who was riding in the back passenger seat, exited the Lincoln and approached the Honda. Defendant placed his hand inside the passenger window of the Honda, though Officer McPhatter could not discern whether Defendant took anything from the car. The driver of the Honda appeared and spoke with Defendant for a few seconds. Defendant then
 
 *581
 
 returned to the Lincoln, and he and the other occupants drove away. No one in the Lincoln had
 
 *713
 
 ordered any food. Based on his roughly eighteen months of working as a tactical narcotics officer and having observed over 200 drug deals, Officer McPhatter concluded that Defendant had just participated in a drug transaction.
 

 While other officers in the unit watched, the Lincoln next proceeded to a Shell gas station. Officer Randazzo radioed that the Lincoln continued to be driven in a careless and reckless manner, at an estimated fifteen miles per hour over the speed limit. After leaving the Shell gas station, Officer McPhatter stopped the Lincoln for reckless driving and speeding. Officers Randazzo, Farrish, Hinkle, and Hairston also participated in the stop. All five officers were in full uniform as they approached the Lincoln.
 

 Officer McPhatter approached the passenger's side of the vehicle while Officer Hairston and Officer Farrish approached the driver's side. As he neared the vehicle, Officer McPhatter noticed Defendant reach toward the floorboard. Because he did not know whether Defendant had a weapon or was attempting to conceal contraband underneath the seat, Officer McPhatter asked Defendant to show his hands. Defendant raised his hands, which were daubed with a light pink substance that Defendant stated was fabric softener. Officer McPhatter ordered Defendant out of the vehicle and asked Defendant "if he was attempting to conceal something inside the vehicle or on his person." Defendant told Officer McPhatter "that was not the case and that he did not have anything illegal on his person." Officer McPhatter testified that "At that time I asked [Defendant] for consent to search his person, which he granted me by stating, Go ahead." However, Defendant testified that he never gave Officer McPhatter permission to conduct a search.
 

 Officer McPhatter testified that when he proceeded to pat Defendant down, "I noticed a large-a normal-larger than normal bulge near the groin area that's not consistent with like male parts." Officer McPhatter detained Defendant in handcuffs at that point because "It was obvious to me in that he had some kind of contraband on his person." Officer McPhatter "asked [Defendant] if he had anything inside his underwear," and Defendant said that he did. Officer McPhatter then asked Defendant "if he'd retrieve-retrieve the item for me and he told me that he would do so." Officer McPhatter removed the handcuffs from Defendant, and Defendant reached into his pants and produced a single plastic bag containing heroin. Defendant was placed under arrest. Officer McPhatter testified that "maybe five minutes" had passed from the time he pulled
 
 *582
 
 the Lincoln over to the time Defendant pulled the bag of heroin out of his underwear.
 

 After hearing Defendant's Motion to Suppress, the trial court adopted Officer McPhatter's version of events and found that Defendant had consented to the search. The trial court denied Defendant's Motion to Suppress, reasoning:
 

 Officer McPhatter had reasonable suspicion to stop the Lincoln for the traffic offenses observed. He had reason to ask Defendant to show his hands (for officer safety) after he observed Defendant reach toward [the] floorboard. He had reason to inquire about whether Defendant was trying to conceal anything or had anything illegal (based on movement in car and what he observed at Sonic with Honda). Defendant gave him permission to search. Even if he hadn't, officer was justified in patting Defendant down (frisk for weapons). And once he observed the bulge in Defendant's groin, he was justified in asking him about it and searching further.
 

 Defendant thereafter pleaded guilty to two counts of trafficking heroin, while reserving his right to appeal the suppression ruling. The trial court sentenced Defendant to 90 to 120 months' imprisonment. Defendant appeals, challenging the trial court's order denying his Motion to Suppress.
 

 Standard of Review
 

 In considering the trial court's denial of a defendant's motion to suppress, our review
 
 *714
 
 is limited to determining whether "the trial court's findings of fact are supported by competent evidence and whether those findings support its conclusions of law."
 
 State v. King
 
 ,
 
 206 N.C. App. 585
 
 , 587,
 
 696 S.E.2d 913
 
 , 914 (2010) (citing
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) ).
 

 Discussion
 

 Defendant contends that "the trial court erroneously concluded Officer McPhatter was justified in frisking [Defendant] for weapons when there was no evidence he was armed and dangerous." Defendant also argues that his consent did not render the search permissible (1) because it was not voluntary, and (2) because even if it was voluntary, Officer McPhatter's pat-down of Defendant's groin area exceeded the scope of his consent. Lastly, Defendant argues that "the trial court's conclusion that Officer McPhatter was justified in asking [Defendant] about
 
 *583
 
 suspected contraband and searching him further was not supported by the findings of fact or evidence."
 

 I.
 

 We first address Defendant's argument that his consent cannot properly serve as a justification for the search in the instant case. Defendant maintains that he consented only in acquiescence "to the coercive environment fostered by the police[,]" and that the trial court erred when it denied his Motion to Suppress the evidence obtained therefrom. However, we cannot agree.
 

 The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[A] governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is
 
 per se
 
 unreasonable unless the search falls within a well-delineated exception to the warrant requirement[.]"
 
 Cooke
 
 ,
 
 306 N.C. at 135
 
 ,
 
 291 S.E.2d at 620
 
 . One such exception to the warrant requirement exists "when the search is based on the consent of the detainee."
 
 State v. Jones
 
 ,
 
 96 N.C. App. 389
 
 , 397,
 
 386 S.E.2d 217
 
 , 222 (1989) (citing
 
 Schneckloth v. Bustamonte
 
 ,
 
 412 U.S. 218
 
 , 219,
 
 93 S.Ct. 2041
 
 , 2043,
 
 36 L.Ed. 2d 854
 
 , 858 (1973) and
 
 State v. Belk
 
 ,
 
 268 N.C. 320
 
 , 322,
 
 150 S.E.2d 481
 
 , 483 (1966) ).
 

 To be valid, however, a defendant's consent must have been voluntary.
 
 State v. Little
 
 ,
 
 270 N.C. 234
 
 , 239,
 
 154 S.E.2d 61
 
 , 65 (1967). That is, the State must demonstrate that the consent was "not the result of duress or coercion, express or implied."
 
 Bustamonte
 
 ,
 
 412 U.S. at 248
 
 ,
 
 93 S.Ct. at 2059
 
 ,
 
 36 L.Ed. 2d at 875
 
 . It is well settled that "[t]o be voluntary the consent must be unequivocal and specific, and freely and intelligently given[,]" rather than having been "given merely to avoid resistance."
 
 Little
 
 ,
 
 270 N.C. at 239
 
 ,
 
 154 S.E.2d at 65
 
 (citations and quotation marks omitted).
 

 " 'The question whether a consent to a search was in fact "voluntary" or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of the circumstances.' "
 
 State v. Brown
 
 ,
 
 306 N.C. 151
 
 , 170,
 
 293 S.E.2d 569
 
 , 582,
 
 cert. denied
 
 ,
 
 459 U.S. 1080
 
 ,
 
 103 S.Ct. 503
 
 ,
 
 74 L.Ed. 2d 642
 
 (1982) (quoting
 
 Bustamonte
 
 ,
 
 412 U.S. at 227
 
 ,
 
 93 S.Ct. at 2048
 
 ,
 
 36 L.Ed. 2d at
 
 862-63 ). The State is not required to demonstrate that a defendant knew that he had a right to refuse the search in order to establish that his consent was voluntary under the totality of the circumstances.
 
 Bustamonte
 
 ,
 
 412 U.S. at 249
 
 ,
 
 93 S.Ct. at 2059
 
 ,
 
 36 L.Ed. 2d at 875
 
 . However, "the subject's knowledge of a right to refuse is a factor to be taken into account[.]"
 

 Id.
 

 For instance, our Supreme Court has explained that
 
 *584
 
 whether the defendant "was a young and inexperienced person" may be of relevance.
 
 Little
 
 ,
 
 270 N.C. at 240
 
 ,
 
 154 S.E.2d at 65
 
 . Otherwise, "the conditions under which the consent to search was given[,]"
 
 United States v. Lattimore
 
 ,
 
 87 F.3d 647
 
 , 650 (4th Cir. 1996) (citations omitted), are reviewed in order to determine whether
 
 *715
 
 there is "evidence of any inherently coercive tactics-either from the nature of the police questioning or the environment in which it took place."
 
 Bustamonte
 
 ,
 
 412 U.S. at 247
 
 ,
 
 93 S.Ct. at 2058
 
 ,
 
 36 L.Ed. 2d at 874
 
 .
 

 In the instant case, Defendant contends that his race is highly relevant to the determination of whether he voluntarily consented to the search, in that "there is strong evidence that people of color will view a 'request' to search by the police as an inherently coercive command." In support of his argument, Defendant cites various studies which tend to indicate that for people of color in general, "any police request for consent to search will be viewed as an unequivocal demand to search that is disobeyed or challenged only at significant risk of bodily harm." Marcy Strauss,
 
 Reconstructing Consent
 
 ,
 
 92 J. Crim. L. & Criminology 211
 
 , 243 (2002). Accordingly, Defendant urges that his race "gives pause as to whether the consent" in the instant case was "genuinely voluntary."
 

 Defendant is correct that his race may be a relevant factor in considering whether his consent was voluntary under the totality of the circumstances.
 
 United States v. Mendenhall
 
 ,
 
 446 U.S. 544
 
 , 558,
 
 100 S.Ct. 1870
 
 , 1879,
 
 64 L.Ed. 2d 497
 
 , 512 (1980) (citation omitted). However, beyond the studies to which he refers, the record is devoid of any indication that
 
 Defendant's
 
 individual consent in this particular case was involuntary.
 
 See
 
 id.
 

 ("While these [race] factors were not irrelevant, neither were they decisive[.]") (citation omitted). To the contrary, the overall circumstances presented at the suppression hearing tended to show that Defendant consented "freely and intelligently[,]" and not "merely to avoid resistance."
 
 Little
 
 ,
 
 270 N.C. at 239
 
 ,
 
 154 S.E.2d at 65
 
 (citations and quotation marks omitted).
 

 While multiple officers were present on the scene, Officer McPhatter was the only officer who interacted with Defendant.
 
 See
 

 State v. Cobb
 
 , --- N.C. App. ----, ----,
 
 789 S.E.2d 532
 
 , 539 (2016) ("Although there were four officers present at defendant's residence, only two ... were speaking with defendant when he initially gave consent to search his room.");
 
 see also
 

 State v. McDaniels
 
 ,
 
 103 N.C. App. 175
 
 , 184,
 
 405 S.E.2d 358
 
 , 364 (1991) (citing
 
 State v. Fincher
 
 ,
 
 309 N.C. 1
 
 , 25,
 
 305 S.E.2d 685
 
 , 700 (1983) (Exum, J., dissenting) ) ("Defendant makes much of the fact that there were a number of officers at the scene; however, our Supreme Court has refused to hold that police coercion exists as a matter of law even when ten or more officers are present ... before the suspect consents to
 
 *585
 
 a search."). When Officer McPhatter approached the Lincoln, he asked Defendant whether he "had anything illegal on [him]." Defendant said that he did not. Upon competent evidence, the trial court found that Officer McPhatter then asked if he could conduct a search of Defendant's person, to which Defendant responded, "go ahead." Defendant testified that he and Officer McPhatter had "no other conversation." At no point did Defendant testify that he was unaware of his ability to refuse Officer McPhatter's request, or that he feared retribution had he elected to do so. Moreover, the record contains no indication that Officer McPhatter "made threats, used harsh language, or raised [his] voice[ ] at any time during the encounter."
 
 Cobb
 
 , --- N.C. App. at ----,
 
 789 S.E.2d at 539
 
 . There was also no evidence "that any of the officers ever made physical contact with [D]efendant" before asking for his consent to search.
 
 Id
 
 . Each of the officers' firearms remained holstered throughout the encounter.
 
 See
 

 McDaniels
 
 ,
 
 103 N.C. App. at 184
 
 ,
 
 405 S.E.2d at 364
 
 . Based on these circumstances, we cannot conclude that Defendant's consent was involuntary, and we affirm the trial court's conclusion that Defendant's permission justified Officer McPhatter's search.
 

 II.
 

 Defendant next argues that "the scope of [his] consent to a search of his person did not include a frisk of his private parts, and lacking probable cause or exigent circumstances to justify such a search, [Officer] McPhatter's pat-down of [Defendant's] groin area was constitutionally intolerable." However, because
 
 *716
 
 we conclude that Defendant's consent encompassed the sort of limited frisk that was performed in the instant case, neither probable cause nor exigency was required to justify the search.
 

 Voluntary consent to a search does not permit an officer to embark upon an unfettered search free from boundary or limitation.
 
 See
 

 State v. Stone
 
 ,
 
 362 N.C. 50
 
 , 54,
 
 653 S.E.2d 414
 
 , 417 (2007) (citing
 
 Florida v. Jimeno
 
 ,
 
 500 U.S. 248
 
 , 251,
 
 111 S.Ct. 1801
 
 , 1804,
 
 114 L.Ed. 2d 297
 
 , 302 (1991) ). Rather, "[a] suspect's consent can impose limits on the scope of a search in the same way as do the specifications of a warrant."
 
 Id.
 
 at 54,
 
 653 S.E.2d at 417-18
 
 (quoting
 
 United States v. Milian-Rodriguez
 
 ,
 
 759 F.2d 1558
 
 , 1563 (11th Cir. 1985) ). And "[e]ven when an individual gives a general consent without express limitations, the scope of a permissible search has limits."
 
 Id.
 
 at 54,
 
 653 S.E.2d at
 
 418 (citing
 
 United States v. Blake
 
 ,
 
 888 F.2d 795
 
 , 800-01 (11th Cir. 1989) ). In such a case, the limit on the search is that of reasonableness-that is, "what the reasonable person would expect."
 

 Id.
 

 (citing
 
 Blake
 
 ,
 
 888 F.2d at
 
 800-01 ). Our Supreme Court has clearly stipulated that " '[t]he standard for measuring the scope
 
 *586
 
 of a suspect's consent ... is that of "objective" reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?' "
 
 Id.
 
 at 53,
 
 653 S.E.2d at 417
 
 (quoting
 
 Jimeno
 
 ,
 
 500 U.S. at 250-51
 
 ,
 
 111 S.Ct. at 1803-04
 
 ,
 
 114 L.Ed. 2d at
 
 302 ).
 

 Accordingly, to determine whether Defendant's general consent to a search of his person encompassed a pat-down of the area of his genitalia, "we consider whether a reasonable person would have understood his consent to include such an examination."
 
 Id.
 
 at 54,
 
 653 S.E.2d at
 
 417 (citing
 
 Jimeno
 
 ,
 
 500 U.S. at 251
 
 ,
 
 111 S.Ct. at 1804
 
 ,
 
 114 L.Ed. 2d at
 
 302 ).
 

 Defendant cites
 
 State v. Stone
 
 for the proposition that a "reasonable individual would not understand [the individual's] consent to a search of his or her body to include an officer touching his or her genitalia." In
 
 Stone
 
 , "the officer pulled [the] [d]efendant's sweatpants away from his body and trained his flashlight on [the] [d]efendant's groin area[,]" at which point the defendant immediately objected, "Whoa."
 
 Id
 
 . at 55,
 
 653 S.E.2d at 418
 
 . Our Supreme Court concluded that "a reasonable person in defendant's circumstances would not have understood that his general consent to search included allowing the law enforcement officer to pull his pants and underwear away from his body and shine a flashlight on his genitals."
 
 Id
 
 . at 56,
 
 653 S.E.2d at 418-19
 
 (citation omitted). In so concluding, the Supreme Court focused on the fact that the officers did not shield the defendant's exposure from public view, and noted that the defendant's immediate objection was relevant to the overall analysis of whether the officer's conduct had exceeded the bounds of ordinary societal expectations.
 
 Id
 
 . at 55-56,
 
 653 S.E.2d at 418-19
 
 . The Court also examined several federal cases that "disapproved" of "search[es] involving direct frontal touching of a suspect's genitals[.]"
 
 Id.
 
 at 56,
 
 653 S.E.2d at
 
 418 (citing
 
 Blake
 
 ,
 
 888 F.2d at 800-01
 
 , and
 
 United States v. Rodney
 
 ,
 
 956 F.2d 295
 
 , 298 (D.C. Cir. 1992) ) (quotation marks omitted).
 

 In the instant case by contrast, we believe that Officer McPhatter's pat-down over Defendant's groin area was within the bounds of what a reasonable person would have expected the search to include. Officer McPhatter limited his pat-down to the outer layer of Defendant's clothing. He did not reach into Defendant's pants in order to search his undergarments or directly touch his groin area.
 
 Cf.
 

 Stone
 
 ,
 
 362 N.C. at 54-55
 
 ,
 
 653 S.E.2d at 418
 
 (quoting
 
 Blake
 
 ,
 
 888 F.2d at 797
 
 , 800-01 ) (" '[I]t cannot be said that a reasonable individual would understand that a search of one's person would ... entail' " the officer "reach[ing] into [the defendant's] groin region where he did a 'frontal touching[.]' "). Officer McPhatter also did not expose Defendant to either himself or the public.
 
 See
 

 State v. Smith
 
 ,
 
 118 N.C. App. 106
 
 , 118,
 
 454 S.E.2d 680
 
 , 687
 
 *587
 
 (Walker, J., concurring and dissenting),
 
 rev'd
 
 ,
 
 342 N.C. 407
 
 ,
 
 464 S.E.2d 45
 
 (1995). Nor does the record reveal-through either video or testimonial evidence-that the pat-down of Defendant's
 
 *717
 
 groin area was otherwise conducted in an unreasonably offensive manner. Moreover, Officer McPhatter asked for Defendant's consent to search after inquiring into whether "he was attempting to conceal something ... on his person[,]" thus reasonably alerting Defendant to the fact that the search would likely include areas in which such items might immediately be hidden.
 

 Based on these circumstances, we conclude that a reasonable person in Defendant's position would have understood his consent to include the sort of limited outer pat-down that was performed in the instant case. Accordingly, the trial court did not err when it denied Defendant's Motion to Suppress on the grounds that Defendant gave his "permission to search."
 

 Because we conclude that Defendant's Motion to Suppress was properly denied in light of Defendant's valid consent, we need not address Defendant's argument that the trial court erred when it concluded that Officer McPhatter was also "justified in frisking [Defendant] for weapons when there was no evidence he was armed and dangerous."
 

 III.
 

 Notwithstanding his consent, Defendant argues that Officer "McPhatter's continued detention of [Defendant] after searching his groin area to 'find out' what contraband may have been in [Defendant's] pants was not justified by the plain feel doctrine." This argument is unpersuasive.
 

 Officer McPhatter's pat-down of Defendant was lawful by virtue of Defendant's consent. At that point, Officer McPhatter felt a bulge that he judged was "not consistent with ... male parts[,]" and "was obvious[ly]" contraband. When coupled with the totality of the circumstances already observed by Officer McPhatter, this discovery amounted to reasonable suspicion justifying Officer McPhatter's further detention of Defendant in order to question him about the contents of his pockets.
 
 See
 

 New Jersey v. T.L.O.
 
 ,
 
 469 U.S. 325
 
 , 347,
 
 105 S.Ct. 733
 
 , 745-46,
 
 83 L.Ed. 2d 720
 
 , 738 (1985) ;
 
 State v. Johnson
 
 ,
 
 246 N.C. App. 677
 
 , 693,
 
 783 S.E.2d 753
 
 , 765 (2016).
 

 Lastly, Defendant argues that
 

 By handcuffing [Defendant] and not allowing him to leave, McPhatter restrained [Defendant's] liberty to the degree associated with formal arrest. Thus, before questioning [Defendant] further, McPhatter was required to inform
 
 *588
 
 [Defendant] of his
 
 Miranda
 
 rights. McPhatter did not do so. [Defendant's] statement admitting that he had something in his underwear, in response to McPhatter's custodial questioning, was the product of coercion, obtained in violation of
 
 Miranda
 
 , and the evidence obtained from this constitutional violation should have been suppressed. The trial court erred in denying [Defendant's] motion to suppress.
 

 "The
 
 Miranda
 
 warnings are a prophylactic standard used to safeguard the privilege against self-incrimination. The exclusionary rule in such a case is applied differently than it is applied in a case in which a person's constitutional rights are violated such as by an illegal search and seizure."
 
 State v. May
 
 ,
 
 334 N.C. 609
 
 , 612,
 
 434 S.E.2d 180
 
 , 182 (1993). "If the record shows there was no actual coercion but only a violation of the
 
 Miranda
 
 warning requirement," physical evidence seized as a result of the otherwise uncoerced statement need not be suppressed.
 

 Id.
 

 In the instant case, and for the same reasoning explained in Section I,
 
 supra
 
 , the record contains no evidence which would otherwise suggest that Defendant had been coerced when he admitted to Officer McPhatter that he had something in his underwear and handed over the narcotics. Thus, a
 
 Miranda
 
 violation would not require suppression of the narcotics ultimately retrieved.
 

 Accordingly, we find no error in the trial court's denial of Defendant's Motion to Suppress.
 

 Conclusion
 

 For the reasoning contained herein, the trial court's order denying Defendant's Motion to Suppress is
 

 AFFIRMED.
 

 Judges ELMORE and TYSON concur.