IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-214

 No. COA21-469

 Filed 5 April 2022

 Guilford County, No. 18 CRS 83563, -64

 STATE OF NORTH CAROLINA

 v.

 ROCHEIN FUQUAN JORDAN.

 Appeal by Defendant from Judgment entered 13 April 2021 by Judge R. Stuart

 Albright in Guilford County Superior Court. Heard in the Court of Appeals 25

 January 2022.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General John A.
 Payne, for the State.

 Benjamin J. Kull for defendant-appellant.

 HAMPSON, Judge.

 Factual and Procedural Background

¶1 Defendant Rochein Fuquan Jordan (Defendant) appeals from a Judgment

 entered upon his guilty plea to Possession of a Firearm by a Felon and Possession of

 Cocaine, following the denial of his Motion to Suppress evidence obtained during a

 search of his residence. The Record before us—including evidence presented during

 the hearing on the Motion to Suppress—tends to reflect the following:
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

¶2 In July 2018, a confidential informant reported to the Greensboro Police

 Department Defendant was selling heroin and crack cocaine out of the apartment

 (Apartment) Defendant shared with his girlfriend, Harlena Whitworth (Whitworth).

 In early August 2018, the lead officer in the investigation, Officer Garrison,

 orchestrated a controlled drug buy at Defendant’s Apartment. During the controlled

 buy, Officer Garrison observed the informant go into the Apartment and come back

 out. Afterwards, Officer Garrison followed the informant to a separate location,

 where the informant turned over the drugs—which Officer Garrison identified as

 heroin—and identified Defendant as the seller.

¶3 A few weeks after the controlled buy, on or about 20 August 2018, officers were

 surveilling the Apartment, when Defendant left the Apartment, riding in the front

 passenger seat of a white Lexus sedan driven by Whitworth. Officer Fisher of the

 Greensboro Police Department quickly caught up to the vehicle and followed it for

 approximately a quarter of a mile. While following the vehicle, Officer Fisher noticed

 the vehicle was traveling 47 miles-per-hour in a 35 mile-per-hour zone. Officer Fisher

 activated his blue lights and siren to initiate a traffic stop. As Officer Fisher pulled

 over the vehicle, he noticed Defendant reaching towards the center console, and upon

 approaching the vehicle, smelled a strong odor of marijuana coming from the vehicle.

 Consequently, Officer Fisher requested Defendant and Whitworth exit the vehicle.

 Officer Fisher placed Defendant and Whitworth in handcuffs and took them to the
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 rear of the vehicle so the second officer, Officer Childrey, could search the car. A

 search of the car revealed two partially burned blunts in the front passenger

 compartment ashtray and a small baggie of marijuana in the center console.

¶4 After Officer Childrey had searched the car, Officer Fisher called Officer

 Garrison to inquire into whether he should inform Defendant and Whitworth about

 the ongoing narcotics investigation. The call to Officer Garrison lasted five to seven

 minutes. Subsequently, Officer Fisher informed Whitworth and Defendant this was

 “not just a random traffic stop” and law enforcement officials were actually there to

 follow up on the informant’s tip about the sales of heroin and crack cocaine from the

 Apartment, as well as the controlled buy. During the conversation, Whitworth and

 Defendant remained handcuffed, outside of their car. Officer Fisher explained:

 that [he] felt like [the police] had probable cause to apply for a
 search warrant. And . . . we could apply for a search warrant or
 we could search - - if [Whitworth] should be willing to provide
 consent, we could search her residence on consent.

 After Whitworth learned of the scope of the investigation, she consented to the search

 of the Apartment.1 The officers transported Defendant and Whitworth back to the

 Apartment where Whitworth signed a consent form. A search of the Apartment

 1 Officer Fisher testified Whitworth consented to the search—not Defendant. However,
 Officer Fisher also testified Defendant cooperated with the search and neither Whitworth
 nor Defendant attempted to revoke the consent.
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 revealed, inter alia, a firearm found next to Defendant’s driver’s license and a

 quantity of cocaine.

¶5 On 3 September 2020, Defendant was indicted for Possession of a Firearm by

 a Felon and Felony Possession of Cocaine. Subsequently, on 27 February 2020,

 Defendant filed a Motion to Suppress the evidence obtained as a result of the search

 of the Apartment, alleging it was the product of an unreasonable search and seizure

 in violation of his federal and state constitutional rights. The trial court heard

 arguments on Defendant’s Motion to Suppress the same day.

¶6 Defendant argued the search was unconstitutional because “[o]nce the traffic

 violation was addressed and once the search of the vehicle was completed, there was

 no other new probable cause or reasonable suspicion developed to detain [Defendant]

 or Ms. Whitworth any further beyond that.” Thus, according to Defendant, once the

 purpose for the stop was complete, any action taken after the stop was illegal because

 it unlawfully extended the stop.

¶7 Following the hearing, the trial court denied Defendant’s Motion to Suppress

 by Order entered on 23 March 2020. The trial court found, in relevant part:

 8. The stop began as a traffic stop for speeding, but upon the
 officer’s observation of the odor of marijuana when he approached
 the vehicle, probable cause to search the vehicle was developed,
 and officers were authorized to conduct a search of the passenger
 compartment of the vehicle. This search was undertaken a
 produced a small quantity of what law enforcement officers
 determined by training and experience to be marijuana.
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 9. Possession of marijuana is at least a Class 3 misdemeanor in
 North Carolina as of the date of this stop and entry of this Order,
 and law enforcement officers were authorized to take defendant
 into custody based upon the discovery of marijuana in an area of
 the vehicle over which defendant had both actual and
 constructive possession.

 10. Law enforcement officers were further authorized to take
 defendant into custody based upon the evidence of defendant’s
 possession with intent to sell or deliver heroin generated during
 the controlled purchase of that controlled substance from the
 defendant on or about August 2, 2018.

 11. The stop, detention, and arrest of the defendant in the case at
 bar do not implicate those Fourth Amendment violations which
 were at issue in Rodriguez. Consequently, the holding in
 Rodriguez does not require this Court to exclude the evidence
 recovered as a result of the consent search of defendant’s
 residence on August 20, 2018.

¶8 Subsequently, on 12 April 2021, Defendant pled guilty to the charges of

 Possession of a Firearm by a Felon and Possession of Cocaine, reserving his right to

 appeal the denial of his Motion to Suppress.2 The trial court consolidated the two

 charges into one Judgment and imposed a suspended sentence of 15 to 27 months.

 Defendant gave oral Notice of Appeal in open court.

 Issues

 2 “Pursuant to N.C. Gen. Stat. § 15A-979(b), a defendant bears the burden of notifying the
 state and the trial court during plea negotiations of the intention to appeal the denial of a
 motion to suppress, or the right to do so is waived after a plea of guilty.” State v. Brown,
 142 N.C. App. 491, 492, 543 S.E.2d 192, 193 (2001) (citation and quotation marks omitted).
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

¶9 The sole issue on appeal is whether the trial court erred in denying the Motion

 to Suppress on the basis the consent given to search the Apartment during the traffic

 stop of Defendant and Whitworth was voluntarily given during the course of a valid

 traffic stop.

 Analysis

 A. Standard of Review

¶ 10 “Our review of a trial court’s denial of a motion to suppress is strictly limited

 to a determination of whether [the trial court’s] findings are supported by competent

 evidence, and in turn, whether the findings support the trial court’s ultimate

 conclusion.” State v. Reynolds, 161 N.C. App. 144, 146-47, 587 S.E.2d 456, 458 (2003)

 (citation and quotation marks omitted). The trial court’s conclusions of law, however,

 are reviewed de novo. See State v. Fernandez, 346 N.C. 1, 11, 484 S.E.2d 350, 357

 (1997) (citation omitted). “In reviewing the denial of a motion to suppress, we

 examine the evidence introduced at trial in the light most favorable to the State[.]”

 State v. Moore, 152 N.C. App. 156, 159, 566 S.E.2d 713, 715 (2002) (citations omitted).

 B. Duration of the Traffic Stop

¶ 11 Defendant concedes Officer Fisher had reasonable suspicion to initiate the

 traffic stop based on the speeding infraction, and based on the smell of marijuana,

 had reasonable suspicion to search the vehicle. However, Defendant argues, the

 consent to search the Apartment was invalid because the consent was given after
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 Officer Fisher extended an otherwise-completed traffic stop in order to conduct an

 unrelated investigation into the sale of heroin and crack-cocaine.

¶ 12 “Upon timely motion, evidence must be suppressed if: (1) Its exclusion is

 required by the Constitution of the United States or the Constitution of the State of

 North Carolina[.]” N.C. Gen. Stat. § 15A-974(a) (2021). The Fourth Amendment of

 the United States Constitution guarantees “[t]he right of the people to be secure . . .

 against unreasonable searches and seizures[.]” U.S. Const. amend. IV. “A traffic stop

 is a seizure” within the meaning of the Fourth Amendment “even though the purpose

 of the stop is limited and the resulting detention quite brief.” State v. Styles, 362 N.C.

 412, 414, 665 S.E.2d 438, 439 (2008) (quoting Delaware v. Prouse, 440 U.S. 648, 653

 (1979)). “Thus, a traffic stop is subject to the reasonableness requirement of the

 Fourth Amendment.” State v. Reed, 373 N.C. 498, 507, __ S.E.2d __ (2020).

¶ 13 We evaluate the reasonableness of a traffic stop by examining “(1) whether the

 traffic stop was lawful at its inception and (2) whether the continued stop was

 sufficiently limited in scope and duration to satisfy the conditions of an investigative

 seizure.” Id. (citation and quotation omitted). “[T]he tolerable duration of police

 inquiries in the traffic-stop context is determined by the seizure’s ‘mission’—to

 address the traffic violation that warranted the stop.” Rodriguez v. United States,

 575 U.S. 348, 354, 191 L. Ed. 2d 492, 498 (2015). Nevertheless, “during the course of

 a traffic stop [the police] may question a vehicle’s occupants on topics unrelated to
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 the traffic infraction . . . as long as the police do not extend an otherwise-completed

 traffic stop in order to conduct these unrelated investigations.” United States v.

 Bowman, 884 F.3d 200, 210 (4th Cir. 2018). Moreover, the seizure may be extended

 if “reasonable suspicion of another crime arose before that mission was completed.”

 State v. Bullock, 370 N.C. 256, 257, 805 S.E.2d 671, 673 (2017).

¶ 14 In this case, Defendant contends since the officers never took any further

 action regarding the speeding and marijuana possession, the original and secondary

 missions of the traffic stop “necessarily and abruptly ended” when Officer Fisher

 admitted that the officers “were actually there” to investigate a separate and

 completely unrelated matter. Our Supreme Court recently rejected a similar

 argument in the case of State v. Johnson. There, the officer initially stopped the

 defendant for a “fictitious tag” violation, and after conducting a criminal record’s

 check that revealed defendant had been charged with multiple violent crimes and

 offenses, returned to the vehicle to search defendant’s person and vehicle. State v.

 Johnson, 2021-NCSC-85, ¶ 2-5. The defendant argued since the officer did not

 ultimately issue a citation for the traffic violation, the officer had necessarily decided

 not to issue the citation at the time he searched Defendant, and thus, the searches

 were not in furtherance of the purpose of the traffic stop, but rather “independent

 investigative actions targeting other unarticulated suspicions of criminal activity.”

 Id. at ¶ 22. Our Supreme Court noted the officer did not testify that he had already
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 made a determination to refrain from charging defendant for the traffic violation at

 the time of the record check and subsequent Terry frisk. Id. at ¶ 24. Thus, the Court

 concluded:

 The officer’s declination to issue a citation to defendant for the
 traffic offense, with only defendant’s speculation as to the timing
 of the officer’s decision to refrain from charging defendant with
 the violation in the dearth of any evidence to support defendant’s
 theory, does not equate to a conclusion that the officer
 unreasonably prolonged the traffic stop.

 Id. Cf. State v. Bedient, 247 N.C. App. 314, 318, 786 S.E.2d 319, 323 (2016) (“[T]he

 original purpose, or mission, of the traffic stop—addressing defendant’s failure to dim

 her high beam lights—had concluded [when the officer] gave defendant a verbal

 warning, deciding not to issue defendant a traffic ticket.”).3

¶ 15 Similarly, here, at the time Officer Fisher asked for consent to search the

 Apartment, there is no evidence to suggest Officer Fisher had already made a

 determination to refrain from charging Defendant for the traffic violation or

 marijuana possession. Instead, the Record seems to indicate that at the time of

 Officer Fisher’s request for consent to search the Apartment, the stop had not been

 “otherwise-completed” as he had not yet made a decision on whether to charge

 3 See also, State v. Duncan, 272 N.C. App. 341, 354, 846 S.E.2d 315, 325 (2020) (concluding

 the officer’s search of defendant’s person was unrelated to the mission of the stop when the
 officer admitted that after an initial pat-down to ensure the defendant did not have any
 weapons, “he believed he felt marijuana in Defendant’s jacket and that this was the purpose
 of the search”).
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 Defendant for the marijuana possession. Indeed, Officer Fisher had not yet issued a

 verbal warning or a citation for the offenses and testified at the time of the request

 for consent to search, Defendant was not yet free to go. Moreover, as the trial court

 found: “law enforcement were authorized to take defendant into custody based upon

 the discovery of marijuana in an area of the vehicle over which defendant had both

 actual and constructive control.” Thus, although law enforcement did not ultimately

 charge Defendant with possession of marijuana, the evidence tends to show the

 officers had not yet decided whether to take Defendant into custody for the marijuana

 possession at the time the request for consent to search the Apartment was made.4

 Therefore, the request was made “during the course of a traffic stop,” and the officer

 was permitted to ask the vehicle’s occupants a question unrelated to the traffic

 infraction.

¶ 16 Furthermore, assuming the “missions of the stop” were completed at the time

 Officer Fisher asked for consent to search the Apartment, he was justified in

 extending the stop because he had reasonable suspicion to believe Defendant was

 4 Defendant makes no argument he was in custody at the time consent was given and, thus,

 subject to constitutional protections for a person in custody, e.g. Miranda warnings, or that
 if he was in fact in custody for the marijuana possession this would have invalidated consent
 to search the Apartment. But see State v. Cummings, 188 N.C. App. 598, 603, 656 S.E.2d
 329, 333 (2008) (“After Defendant invoked his right to counsel, interrogation ceased. Agents
 did not ask any further questions about the robbery or Mr. Graham’s homicide. The agents
 asked only whether Defendant would give his consent for his vehicle to be searched, a
 question to which Miranda warnings do not apply.”).
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 engaged in the sale of controlled substances. “To prolong a detention beyond the scope

 of a routine traffic stop an officer must possess a justification for doing so other than

 the initial traffic violation that prompted the stop in the first place. Reed, 373 N.C.

 at 510 (citing United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008)). “This

 requires either the driver’s consent or a reasonable suspicion that illegal activity is

 afoot.” Id.

¶ 17 The reasonable suspicion standard is “a less demanding standard than

 probable cause and requires a showing considerably less than preponderance of the

 evidence.” State v. Styles, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (quoting

 Illinois v. Wardlow, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 567 (2000)). In order to

 meet this standard, an officer simply must “reasonably . . . conclude in light of his

 experience that criminal activity may be afoot.” Bullock, 370 N.C. at 258, 805 S.E.2d

 at 674 (quoting Terry v. Ohio, 392 U.S. 1, 30, 20 L. Ed. 2d 889 (1968)). The officer

 “must simply be able to point to specific and articulable facts which, taken together

 with rational inferences from those facts, reasonably warrant the intrusion.”

 Johnson, 370 N.C. at 34, 803 S.E.2d at 139 (2017) (citation and quotation omitted).

 “To determine whether reasonable suspicion exists, courts must look at the totality

 of the circumstances as viewed from the standpoint of an objectively reasonable police

 officer.” Id.
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

¶ 18 Here, the trial court made several Findings of Fact tending to show Officer

 Fisher had reasonable suspicion, based on specific and articulable facts, criminal

 activity was afoot including: the tip from the confidential reliable informant that

 Defendant was selling heroin and crack cocaine; the surveillance of the Apartment

 during which police witnessed many people visiting the house during a short time;

 and the confidential reliable informant’s controlled purchase of heroin from the

 residence. Indeed, this Court has considered this combination of factors as sufficient

 to rise to the level of probable cause. See State v. Stokley, 184 N.C. App. 336, 340-41,

 646 S.E.2d 640, 644 (2007) (probable cause existed where a confidential informant

 bought cocaine from defendant at defendant’s house, the officer knew and trusted the

 CI, the CI made a controlled buy from defendant after meeting with the officer, and

 the officer witnessed several hand-to-hand transactions between defendant and

 visitors to his house). Therefore, since the officers could likely meet the higher

 standard for probable cause based on the results of the ongoing investigation, Officer

 Fisher could necessarily meet the “less demanding standard” of reasonable suspicion.

 Consequently, the officer was justified in extending the seizure to question Defendant

 about the sale of heroin and crack-cocaine even though it was unrelated to the traffic

 violation. Thus, the trial court did not err in denying the Motion to Suppress because

 the stop was not unlawfully extended.

 C. Voluntary Consent
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

¶ 19 In the alternative, Defendant argues “the consent was necessarily invalid

 because it was the direct result of unconstitutional coercion.” Specifically, Defendant

 contends the officer coerced Defendant and Whitworth by giving them an ultimatum

 under a claim of lawful authority.

¶ 20 “Evidence seized during a warrantless search is admissible if the State proves

 that the defendant freely and voluntarily, without coercion, duress, or fraud,

 consented to the search.” State v. Williams, 314 N.C. 337, 344, 333 S.E.2d 708, 714

 (1985). Whether consent to a search was given voluntarily is a question of fact

 determined from the totality of the circumstances. State v. Brown, 306 N.C. 151, 170,

 293 S.E.2d 569, 582 (1982). In reviewing the circumstances in which consent is given,

 this Court must determine whether there is “evidence of any inherently coercive

 tactics—either from the nature of the police questioning or the environment in which

 it took place.” State v. Bartlett, 260 N.C. App. 579, 584, 818 S.E.2d 710, 714-15 (2015)

 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 247, 36 L. Ed. 2d 854, 874 (1973)).

¶ 21 For example, in State v. Bartlett, this Court concluded the defendant

 voluntarily consented to a search after considering circumstantial factors such as:

 only one officer interacted with the defendant even though there were four officers

 present on the scene; the officer did not make threats, use harsh language, or raise

 his voice at any time during the encounter; and each of the officers’ firearms remained

 holstered throughout the encounter. Bartlett, 260 N.C. App. at 584-85, 818 S.E.2d at
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 715. Moreover, “[a]t no point did Defendant testify that he was unaware of his ability

 to refuse [the officer’s] request, or that he feared retribution had he elected to do so.”

 Id. at 585, 818 S.E.2d at 715.

¶ 22 However, “a search cannot be justified as lawful on the basis of consent when

 consent is based upon a representation by the official conducting the search that he

 possesses a warrant.” State v. Kersh, 12 N.C. App. 80, 83, 182 S.E.2d 608, 610 (1971)

 (citing Bumper v. North Carolina, 391 U.S. 543, 550, 20 L. Ed. 2d 797, 803 (1968)

 (holding consent involuntary when the officer announced, “I have a search warrant

 to search your house.”). In that circumstance consent is not valid because “[w]hen a

 law enforcement officer claims authority to search a home under a warrant, he

 announces in effect that the occupant has no right to resist the search.” Bumper, 391

 U.S. 543, 550, 20 L. Ed. 2d 797, 803. Nevertheless, if the officers do not give a suspect

 a reason to believe they presently have a warrant, consent may be valid in the absence

 of coercion. Kersh, 12 N.C. App. at 83, 182 S.E.2d at 610.

¶ 23 Here, unlike in Bumper, Officer Fisher did not claim to presently have a search

 warrant or give Defendant and/or Whitworth a reason to believe they had no right to

 resist the search. Instead, the trial court found Officer Fisher told Defendant they

 “would seek to obtain” a search warrant or they could search “with consent, if

 defendant and/or female would consent to the search.” Furthermore, Officer Fisher

 did not definitively represent to Defendant that police could obtain a search warrant
 STATE V. JORDAN

 2022-NCCOA-214

 Opinion of the Court

 based on the evidence they had, and instead couched the statement by saying “that

 [he] felt like [the police] had probable cause to apply for a search warrant.” Thus,

 Officer Fisher merely gave Defendant his opinion of the evidence—not an ultimatum.

¶ 24 Moreover, the trial court did not find that Officer Fisher used threats, harsh

 language, or raised his voice at any time during the encounter or otherwise used

 inherently coercive tactics in obtaining the consent of Whitworth to search the

 Apartment. The evidence indicates that upon arriving at the Apartment, the officers

 removed the handcuffs from Defendant and Whitworth, informed them of their right

 to refuse the search, and requested Whitworth sign a consent form. Therefore, we

 conclude the trial court did not err in concluding Defendant and/or Whitworth freely

 and voluntarily consented to the search.

 Conclusion

¶ 25 Consequently, for the foregoing reasons, we conclude the trial court did not err

 in denying Defendant’s Motion to Suppress. Accordingly, we affirm the Judgment.

 AFFIRMED.

 Judges DIETZ and INMAN concur.