IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-214

No. COA21-469

Filed 5 April 2022

Guilford County, No. 18 CRS 83563, -64

STATE OF NORTH CAROLINA

v.

ROCHEIN FUQUAN JORDAN.

Appeal by Defendant from Judgment entered 13 April 2021 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 25 January 2022.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General John A. Payne, for the State.*

*Benjamin J. Kull for defendant-appellant.*

HAMPSON, Judge.

## Factual and Procedural Background

¶ 1    Defendant Rochein Fuquan Jordan (Defendant) appeals from a Judgment entered upon his guilty plea to Possession of a Firearm by a Felon and Possession of Cocaine, following the denial of his Motion to Suppress evidence obtained during a search of his residence. The Record before us—including evidence presented during the hearing on the Motion to Suppress—tends to reflect the following:

¶ 2        In July 2018, a confidential informant reported to the Greensboro Police Department Defendant was selling heroin and crack cocaine out of the apartment (Apartment) Defendant shared with his girlfriend, Harlena Whitworth (Whitworth). In early August 2018, the lead officer in the investigation, Officer Garrison, orchestrated a controlled drug buy at Defendant's Apartment. During the controlled buy, Officer Garrison observed the informant go into the Apartment and come back out. Afterwards, Officer Garrison followed the informant to a separate location, where the informant turned over the drugs—which Officer Garrison identified as heroin—and identified Defendant as the seller.

¶ 3        A few weeks after the controlled buy, on or about 20 August 2018, officers were surveilling the Apartment, when Defendant left the Apartment, riding in the front passenger seat of a white Lexus sedan driven by Whitworth. Officer Fisher of the Greensboro Police Department quickly caught up to the vehicle and followed it for approximately a quarter of a mile. While following the vehicle, Officer Fisher noticed the vehicle was traveling 47 miles-per-hour in a 35 mile-per-hour zone. Officer Fisher activated his blue lights and siren to initiate a traffic stop. As Officer Fisher pulled over the vehicle, he noticed Defendant reaching towards the center console, and upon approaching the vehicle, smelled a strong odor of marijuana coming from the vehicle. Consequently, Officer Fisher requested Defendant and Whitworth exit the vehicle. Officer Fisher placed Defendant and Whitworth in handcuffs and took them to the

rear of the vehicle so the second officer, Officer Childrey, could search the car. A search of the car revealed two partially burned blunts in the front passenger compartment ashtray and a small baggie of marijuana in the center console.

¶ 4      After Officer Childrey had searched the car, Officer Fisher called Officer Garrison to inquire into whether he should inform Defendant and Whitworth about the ongoing narcotics investigation. The call to Officer Garrison lasted five to seven minutes. Subsequently, Officer Fisher informed Whitworth and Defendant this was "not just a random traffic stop" and law enforcement officials were actually there to follow up on the informant's tip about the sales of heroin and crack cocaine from the Apartment, as well as the controlled buy. During the conversation, Whitworth and Defendant remained handcuffed, outside of their car. Officer Fisher explained:

> that [he] felt like [the police] had probable cause to apply for a search warrant. And . . . we could apply for a search warrant or we could search - - if [Whitworth] should be willing to provide consent, we could search her residence on consent.

After Whitworth learned of the scope of the investigation, she consented to the search of the Apartment.[1] The officers transported Defendant and Whitworth back to the Apartment where Whitworth signed a consent form. A search of the Apartment

---

[1] Officer Fisher testified Whitworth consented to the search—not Defendant. However, Officer Fisher also testified Defendant cooperated with the search and neither Whitworth nor Defendant attempted to revoke the consent.

revealed, *inter alia*, a firearm found next to Defendant's driver's license and a quantity of cocaine.

¶ 5      On 3 September 2020, Defendant was indicted for Possession of a Firearm by a Felon and Felony Possession of Cocaine. Subsequently, on 27 February 2020, Defendant filed a Motion to Suppress the evidence obtained as a result of the search of the Apartment, alleging it was the product of an unreasonable search and seizure in violation of his federal and state constitutional rights. The trial court heard arguments on Defendant's Motion to Suppress the same day.

¶ 6      Defendant argued the search was unconstitutional because "[o]nce the traffic violation was addressed and once the search of the vehicle was completed, there was no other new probable cause or reasonable suspicion developed to detain [Defendant] or Ms. Whitworth any further beyond that." Thus, according to Defendant, once the purpose for the stop was complete, any action taken after the stop was illegal because it unlawfully extended the stop.

¶ 7      Following the hearing, the trial court denied Defendant's Motion to Suppress by Order entered on 23 March 2020. The trial court found, in relevant part:

> 8. The stop began as a traffic stop for speeding, but upon the officer's observation of the odor of marijuana when he approached the vehicle, probable cause to search the vehicle was developed, and officers were authorized to conduct a search of the passenger compartment of the vehicle. This search was undertaken a produced a small quantity of what law enforcement officers determined by training and experience to be marijuana.

9. Possession of marijuana is at least a Class 3 misdemeanor in North Carolina as of the date of this stop and entry of this Order, and law enforcement officers were authorized to take defendant into custody based upon the discovery of marijuana in an area of the vehicle over which defendant had both actual and constructive possession.

10. Law enforcement officers were further authorized to take defendant into custody based upon the evidence of defendant's possession with intent to sell or deliver heroin generated during the controlled purchase of that controlled substance from the defendant on or about August 2, 2018.

11. The stop, detention, and arrest of the defendant in the case at bar do not implicate those Fourth Amendment violations which were at issue in Rodriguez. Consequently, the holding in *Rodriguez* does not require this Court to exclude the evidence recovered as a result of the consent search of defendant's residence on August 20, 2018.

¶ 8      Subsequently, on 12 April 2021, Defendant pled guilty to the charges of Possession of a Firearm by a Felon and Possession of Cocaine, reserving his right to appeal the denial of his Motion to Suppress.[2]  The trial court consolidated the two charges into one Judgment and imposed a suspended sentence of 15 to 27 months. Defendant gave oral Notice of Appeal in open court.

## Issues

---

[2] "Pursuant to N.C. Gen. Stat. § 15A-979(b), a defendant bears the burden of notifying the state and the trial court during plea negotiations of the intention to appeal the denial of a motion to suppress, or the right to do so is waived after a plea of guilty." *State v. Brown*, 142 N.C. App. 491, 492, 543 S.E.2d 192, 193 (2001) (citation and quotation marks omitted).

¶ 9        The sole issue on appeal is whether the trial court erred in denying the Motion to Suppress on the basis the consent given to search the Apartment during the traffic stop of Defendant and Whitworth was voluntarily given during the course of a valid traffic stop.

## Analysis

### A.  Standard of Review

¶ 10       "Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether [the trial court's] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. Reynolds*, 161 N.C. App. 144, 146-47, 587 S.E.2d 456, 458 (2003) (citation and quotation marks omitted).  The trial court's conclusions of law, however, are reviewed de novo.  *See State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997) (citation omitted).  "In reviewing the denial of a motion to suppress, we examine the evidence introduced at trial in the light most favorable to the State[.]" *State v. Moore*, 152 N.C. App. 156, 159, 566 S.E.2d 713, 715 (2002) (citations omitted).

### B.  Duration of the Traffic Stop

¶ 11       Defendant concedes Officer Fisher had reasonable suspicion to initiate the traffic stop based on the speeding infraction, and based on the smell of marijuana, had reasonable suspicion to search the vehicle.  However, Defendant argues, the consent to search the Apartment was invalid because the consent was given after

Officer Fisher extended an otherwise-completed traffic stop in order to conduct an unrelated investigation into the sale of heroin and crack-cocaine.

¶ 12        "Upon timely motion, evidence must be suppressed if: (1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina[.]"  N.C. Gen. Stat. § 15A-974(a) (2021).  The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  "A traffic stop is a seizure" within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief."  *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).  "Thus, a traffic stop is subject to the reasonableness requirement of the Fourth Amendment."  *State v. Reed*, 373 N.C. 498, 507, __ S.E.2d __ (2020).

¶ 13        We evaluate the reasonableness of a traffic stop by examining "(1) whether the traffic stop was lawful at its inception and (2) whether the continued stop was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."  *Id.* (citation and quotation omitted).  "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop."  *Rodriguez v. United States*, 575 U.S. 348, 354, 191 L. Ed. 2d 492, 498 (2015).  Nevertheless, "during the course of a traffic stop [the police] may question a vehicle's occupants on topics unrelated to

the traffic infraction . . . as long as the police do not extend an otherwise-completed traffic stop in order to conduct these unrelated investigations." *United States v. Bowman*, 884 F.3d 200, 210 (4th Cir. 2018). Moreover, the seizure may be extended if "reasonable suspicion of another crime arose before that mission was completed." *State v. Bullock*, 370 N.C. 256, 257, 805 S.E.2d 671, 673 (2017).

¶ 14 In this case, Defendant contends since the officers never took any further action regarding the speeding and marijuana possession, the original and secondary missions of the traffic stop "necessarily and abruptly ended" when Officer Fisher admitted that the officers "were actually there" to investigate a separate and completely unrelated matter. Our Supreme Court recently rejected a similar argument in the case of *State v. Johnson*. There, the officer initially stopped the defendant for a "fictitious tag" violation, and after conducting a criminal record's check that revealed defendant had been charged with multiple violent crimes and offenses, returned to the vehicle to search defendant's person and vehicle. *State v. Johnson*, 2021-NCSC-85, ¶ 2-5. The defendant argued since the officer did not ultimately issue a citation for the traffic violation, the officer had necessarily decided not to issue the citation at the time he searched Defendant, and thus, the searches were not in furtherance of the purpose of the traffic stop, but rather "independent investigative actions targeting other unarticulated suspicions of criminal activity." *Id.* at ¶ 22. Our Supreme Court noted the officer did not testify that he had already

made a determination to refrain from charging defendant for the traffic violation at

the time of the record check and subsequent *Terry* frisk. *Id*. at ¶ 24. Thus, the Court

concluded:

> The officer's declination to issue a citation to defendant for the traffic offense, with only defendant's speculation as to the timing of the officer's decision to refrain from charging defendant with the violation in the dearth of any evidence to support defendant's theory, does not equate to a conclusion that the officer unreasonably prolonged the traffic stop.

*Id*. *Cf. State v. Bedient,* 247 N.C. App. 314, 318, 786 S.E.2d 319, 323 (2016) ("[T]he

original purpose, or mission, of the traffic stop—addressing defendant's failure to dim

her high beam lights—had concluded [when the officer] gave defendant a verbal

warning, deciding not to issue defendant a traffic ticket.").[3]

¶ 15    Similarly, here, at the time Officer Fisher asked for consent to search the

Apartment, there is no evidence to suggest Officer Fisher had already made a

determination to refrain from charging Defendant for the traffic violation or

marijuana possession. Instead, the Record seems to indicate that at the time of

Officer Fisher's request for consent to search the Apartment, the stop had not been

"otherwise-completed" as he had not yet made a decision on whether to charge

---

[3] *See also, State v. Duncan*, 272 N.C. App. 341, 354, 846 S.E.2d 315, 325 (2020) (concluding the officer's search of defendant's person was unrelated to the mission of the stop when the officer admitted that after an initial pat-down to ensure the defendant did not have any weapons, "he believed he felt marijuana in Defendant's jacket and that this was the purpose of the search").

Defendant for the marijuana possession. Indeed, Officer Fisher had not yet issued a verbal warning or a citation for the offenses and testified at the time of the request for consent to search, Defendant was not yet free to go. Moreover, as the trial court found: "law enforcement were authorized to take defendant into custody based upon the discovery of marijuana in an area of the vehicle over which defendant had both actual and constructive control." Thus, although law enforcement did not ultimately charge Defendant with possession of marijuana, the evidence tends to show the officers had not yet decided whether to take Defendant into custody for the marijuana possession at the time the request for consent to search the Apartment was made.[4] Therefore, the request was made "during the course of a traffic stop," and the officer was permitted to ask the vehicle's occupants a question unrelated to the traffic infraction.

¶ 16        Furthermore, assuming the "missions of the stop" were completed at the time Officer Fisher asked for consent to search the Apartment, he was justified in extending the stop because he had reasonable suspicion to believe Defendant was

---

[4] Defendant makes no argument he was in custody at the time consent was given and, thus, subject to constitutional protections for a person in custody, e.g. *Miranda* warnings, or that if he was in fact in custody for the marijuana possession this would have invalidated consent to search the Apartment. *But see State v. Cummings*, 188 N.C. App. 598, 603, 656 S.E.2d 329, 333 (2008) ("After Defendant invoked his right to counsel, interrogation ceased. Agents did not ask any further questions about the robbery or Mr. Graham's homicide. The agents asked only whether Defendant would give his consent for his vehicle to be searched, a question to which *Miranda* warnings do not apply.").

engaged in the sale of controlled substances. "To prolong a detention beyond the scope of a routine traffic stop an officer must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place. *Reed*, 373 N.C. at 510 (citing *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008)). "This requires either the driver's consent or a reasonable suspicion that illegal activity is afoot." *Id.*

¶ 17        The reasonable suspicion standard is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 567 (2000)). In order to meet this standard, an officer simply must "reasonably . . . conclude in light of his experience that criminal activity may be afoot." *Bullock*, 370 N.C. at 258, 805 S.E.2d at 674 (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889 (1968)). The officer "must simply be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Johnson*, 370 N.C. at 34, 803 S.E.2d at 139 (2017) (citation and quotation omitted). "To determine whether reasonable suspicion exists, courts must look at the totality of the circumstances as viewed from the standpoint of an objectively reasonable police officer." *Id.*

¶ 18          Here, the trial court made several Findings of Fact tending to show Officer Fisher had reasonable suspicion, based on specific and articulable facts, criminal activity was afoot including: the tip from the confidential reliable informant that Defendant was selling heroin and crack cocaine; the surveillance of the Apartment during which police witnessed many people visiting the house during a short time; and the confidential reliable informant's controlled purchase of heroin from the residence. Indeed, this Court has considered this combination of factors as sufficient to rise to the level of probable cause. *See State v. Stokley,* 184 N.C. App. 336, 340-41, 646 S.E.2d 640, 644 (2007) (probable cause existed where a confidential informant bought cocaine from defendant at defendant's house, the officer knew and trusted the CI, the CI made a controlled buy from defendant after meeting with the officer, and the officer witnessed several hand-to-hand transactions between defendant and visitors to his house). Therefore, since the officers could likely meet the higher standard for probable cause based on the results of the ongoing investigation, Officer Fisher could necessarily meet the "less demanding standard" of reasonable suspicion. Consequently, the officer was justified in extending the seizure to question Defendant about the sale of heroin and crack-cocaine even though it was unrelated to the traffic violation. Thus, the trial court did not err in denying the Motion to Suppress because the stop was not unlawfully extended.

C. <u>Voluntary Consent</u>

¶ 19 In the alternative, Defendant argues "the consent was necessarily invalid because it was the direct result of unconstitutional coercion." Specifically, Defendant contends the officer coerced Defendant and Whitworth by giving them an ultimatum under a claim of lawful authority.

¶ 20 "Evidence seized during a warrantless search is admissible if the State proves that the defendant freely and voluntarily, without coercion, duress, or fraud, consented to the search." *State v. Williams*, 314 N.C. 337, 344, 333 S.E.2d 708, 714 (1985). Whether consent to a search was given voluntarily is a question of fact determined from the totality of the circumstances. *State v. Brown*, 306 N.C. 151, 170, 293 S.E.2d 569, 582 (1982). In reviewing the circumstances in which consent is given, this Court must determine whether there is "evidence of any inherently coercive tactics—either from the nature of the police questioning or the environment in which it took place." *State v. Bartlett*, 260 N.C. App. 579, 584, 818 S.E.2d 710, 714-15 (2015) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 247, 36 L. Ed. 2d 854, 874 (1973)).

¶ 21 For example, in *State v. Bartlett*, this Court concluded the defendant voluntarily consented to a search after considering circumstantial factors such as: only one officer interacted with the defendant even though there were four officers present on the scene; the officer did not make threats, use harsh language, or raise his voice at any time during the encounter; and each of the officers' firearms remained holstered throughout the encounter. *Bartlett*, 260 N.C. App. at 584-85, 818 S.E.2d at

715. Moreover, "[a]t no point did Defendant testify that he was unaware of his ability to refuse [the officer's] request, or that he feared retribution had he elected to do so." *Id.* at 585, 818 S.E.2d at 715.

¶ 22        However, "a search cannot be justified as lawful on the basis of consent when consent is based upon a representation by the official conducting the search that he possesses a warrant." *State v. Kersh*, 12 N.C. App. 80, 83, 182 S.E.2d 608, 610 (1971) (citing *Bumper v. North Carolina*, 391 U.S. 543, 550, 20 L. Ed. 2d 797, 803 (1968) (holding consent involuntary when the officer announced, "I have a search warrant to search your house."). In that circumstance consent is not valid because "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search." *Bumper*, 391 U.S. 543, 550, 20 L. Ed. 2d 797, 803. Nevertheless, if the officers do not give a suspect a reason to believe they presently have a warrant, consent may be valid in the absence of coercion. *Kersh*, 12 N.C. App. at 83, 182 S.E.2d at 610.

¶ 23        Here, unlike in *Bumper*, Officer Fisher did not claim to presently have a search warrant or give Defendant and/or Whitworth a reason to believe they had no right to resist the search. Instead, the trial court found Officer Fisher told Defendant they "would seek to obtain" a search warrant or they could search "with consent, if defendant and/or female would consent to the search." Furthermore, Officer Fisher did not definitively represent to Defendant that police could obtain a search warrant

based on the evidence they had, and instead couched the statement by saying "that [he] felt like [the police] had probable cause to *apply* for a search warrant." Thus, Officer Fisher merely gave Defendant his opinion of the evidence—not an ultimatum.

Moreover, the trial court did not find that Officer Fisher used threats, harsh language, or raised his voice at any time during the encounter or otherwise used inherently coercive tactics in obtaining the consent of Whitworth to search the Apartment. The evidence indicates that upon arriving at the Apartment, the officers removed the handcuffs from Defendant and Whitworth, informed them of their right to refuse the search, and requested Whitworth sign a consent form. Therefore, we conclude the trial court did not err in concluding Defendant and/or Whitworth freely and voluntarily consented to the search.

## Conclusion

Consequently, for the foregoing reasons, we conclude the trial court did not err in denying Defendant's Motion to Suppress. Accordingly, we affirm the Judgment.

AFFIRMED.

Judges DIETZ and INMAN concur.